## COMMONWEALTH of Pennsylvania

v.

## Gerry BURNS, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 24, 2009.

Filed Dec. 31, 2009.

Gary S. Server, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, ORIE MELVIN, BENDER, BOWES, PANELLA, DONOHUE, SHOGAN, and ALLEN, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Gerry Burns appeals from the judgment of sentence of March 29, 2007, following his convictions of involuntary deviate sexual intercourse ("IDSI"), sexual assault, aggravated indecent assault, and indecent assault. A divided panel of this court filed a memorandum opinion on December 19, 2008, which reversed the judgment of sentence and remanded the case for a new trial upon finding that the trial court should have allowed appellant to pierce the Rape Shield Law[1] and cross-examine the victim regarding whether she had engaged in sexual activity with another man earlier on the day in question. On February 26, 2009, we granted the Commonwealth's application for reargument *en banc* and withdrew the panel memorandum opinion. After careful review, we now affirm the judgment of sentence.

### OVERVIEW

¶ 2 The victim in this case claimed that she was sleeping and awoke to find appellant performing oral sex on her. Appellant claimed that this was a case of misidentification. DNA testing performed on a pair of shorts the victim was wearing, and offered into evidence, excluded appellant as a contributor of any biological material found. However, in one area tested, the expert identified DNA belonging to neither the victim nor appellant. Thus, appellant wanted to make the argument that the unidentified DNA belonged to the attacker by asking the victim if she recently had consensual sex which might explain the third person's DNA. In other words, appellant claimed if she had not recently

---

1. 18 Pa.C.S.A. § 3104.

had sex with a third person, that would mean the DNA was left by the attacker. Appellant argues that it is unlikely that the victim had recently had sex as she had been in the hospital a week before the incident.

### FACTUAL AND PROCEDURAL HISTORY

¶ 3 Evidence from appellant's trial provided the following factual history. In June of 2005, 19-year-old T.B. ("the victim"), along with her mother and sisters, were living in a house located on 51st Street in Philadelphia. The family had been renting the house from Steven Burns, Sr., appellant's brother, for approximately two to three years. (Notes of testimony, 12/19/06 at 48.) The victim testified that she was familiar with appellant as he was the landlord's brother and occasionally came to the property. (*Id.* at 49.)

¶ 4 On June 26, 2005, at approximately 6:00 a.m., the victim was sleeping on the sofa in her bedroom; she had recently returned home from a hospital stay and was recuperating. The victim woke upon feeling a "poke" in her vagina. (*Id.* at 53–54.) When asked to be more specific, she described the sensation as "slight penetration." (*Id.* at 54.) The victim also stated that she felt "a moisture." (*Id.* at 69.) Having been asleep on her back, she lifted her head to see the top of appellant's head between her legs. (*Id.* at 54–55.) The victim exclaimed, "oh, my God," and told appellant to "get away." (*Id.* at 54.) Appellant started to push himself up and told her he was sorry. (*Id.* at 56–57.) The victim observed appellant's belt was unbuckled but she did not see his penis. (*Id.* at 56.) Appellant told the victim that he had been going through a lot and had a long night, and he left her bedroom. (*Id.* at 57.)

¶ 5 The victim, who was wearing a long pajama shirt without underwear beneath it, got up and pulled on some shorts that were in her "clean clothes" hamper. (*Id.* at 58–59, 103–104.) She ran to a neighbor's house where her mother was babysitting. (*Id.* at 60.) She told her mother that "Gerry tried to rape me." (*Id.* at 60, 61.) The police were immediately called. The victim later gave a statement at the special victim's unit. Upon returning home, she put the shorts in the dirty laundry hamper. (*Id.* at 70–71, 92–93.) Approximately a day later, the police came and took the shorts for analysis. (*Id.*)

¶ 6 Appellant's 15-year-old nephew, Steven Burns ("Burns"), was present in the home at the time of the assault and testified for the Commonwealth. (*Id.* at 135.) Burns explained that on the date in question, he was awakened upon hearing the victim say "get away from me." (*Id.* at 136–137.) "I walked out my door and I ran to the banister because I seen [sic] [appellant] running downstairs." (*Id.* at 137.) Burns then saw appellant run toward the back door of the house and, shortly thereafter, watched the victim leave through the front door. (*Id.* at 138–139.) Burns testified that he also recognized appellant on the day in question due to his cane and his limp. (*Id.* at 151–152.)

¶ 7 Officer Paul Rann testified that he arrived at the scene and searched the house but was unable to locate appellant. He returned later that day with Officer Brian Scalio and was advised by Burns that appellant was in the basement. As the lights in the basement were not working, Officer Rann used a flashlight to go into the basement. The officers repeatedly announced their presence, that they knew appellant was hiding in the basement, and that he should "come out." (Notes of testimony, 12/20/06 at 30–36.) Eventually, the officers found appellant

hiding behind a large pipe, and they took him into custody. (*Id.* at 32–33, 35.)

¶ 8 Laurie Wisniewski, a forensic scientist, testified regarding the DNA identification laboratory report performed on the shorts the victim put on after the attack. Four areas on the shorts, labeled A, B, C, and D, were tested. (*Id.* at 47.) Wisniewski testified that amylase, an enzyme present in saliva, serum, urine, sweat, tears, and semen, was detected in all four areas. *(Id.)* However, the DNA test did not identify appellant's DNA on any of the four areas. (*Id.* at 62–63.) DNA from the victim and at least one other unidentified person was found on the shorts. *(Id.)* Wisniewski also testified to various reasons why appellant's DNA might not have been detected on the shorts.

¶ 9 Appellant's brother, Robert Burns, testified on behalf of the defense. Robert Burns stated that he served eviction papers on the victim's mother. (*Id.* at 10.) It was explained that although the deed to the house was still recorded in the names of appellant's parents, both parents had died and there was a dispute among the siblings as to who owned the property. (*Id.* at 809; notes of testimony, 12/19/06 at 48–52, 67, 100.) The defense presented testimony indicating that the victim's accusations were in retaliation against appellant and his family for having evicted the victim's family from the home.

¶ 10 A jury trial commenced in December of 2006 before the Honorable Lillian H. Ransom. Prior to trial, appellant made an oral motion seeking permission to cross-examine the victim about her past sexual conduct in order to support appellant's defense of mistaken identity. The trial court denied the motion but permitted appellant to argue that someone other than appellant was responsible for the DNA found.

¶ 11 On December 21, 2006, appellant was convicted of involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, and indecent assault.[2] On March 29, 2007, Judge Ransom sentenced appellant to 80 to 160 months on the charge of involuntary deviate sexual intercourse and two years of probation on each of the other charges. Appellant filed timely post-sentence motions which were denied by operation of law on August 3, 2007.

¶ 12 On August 14, 2007, a timely notice of appeal was filed; and in compliance with an order to do so, appellant timely submitted a Pa.R.A.P.1925(b) statement of errors complained of on appeal. The trial court responded with a Rule 1925(a) opinion. On appeal, appellant claims that the trial court abused its discretion by precluding him from piercing the Rape Shield Law and denying his post-verdict motion challenging the weight of the evidence. He further contends that the evidence was insufficient to sustain his convictions for involuntary deviate sexual intercourse and aggravated indecent assault.

## WHETHER THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO PIERCE THE RAPE SHIELD LAW

¶ 13 Turning to the first issue, in presenting his defense of mistaken identity, appellant sought to argue that the attacker was the source of the unidentified DNA found on the shorts. In support thereof, appellant sought to question the victim about her prior sexual conduct as a means to possibly *exclude* any consensual sexual partner that would have accounted for the

---

**2.** A previous trial, held in September of 2006, resulted in a mistrial after the jury was unable to reach a verdict.

"extra" DNA that was neither appellant's nor the victim's.[3] Appellant contends that by precluding such cross-examination of the victim, the trial court misapplied the rape shield statute. We are not persuaded.

¶ 14 Our standard of review of a trial court's ruling on the admissibility of evidence is limited.

A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. 'An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.'

*Commonwealth v. Allburn*, 721 A.2d 363, 366 (Pa.Super.1998), *appeal denied*, 559 Pa. 662, 739 A.2d 163 (1999) (citations omitted), quoting *Commonwealth v. Spiewak*, 533 Pa. 1, 7, 617 A.2d 696, 699 (1992).

¶ 15 Appellant claims he should have been permitted to question the victim about her "sexual encounter or encounters close in time to the act complained of." (Appellant's substituted brief at 18.) Such a claim implicates the Pennsylvania Rape Shield Statute, which provides:

§ 3104. **Evidence of victim's sexual conduct**

(a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) **Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an in camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104.

¶ 16 The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim.[4] *Allburn*, 721 A.2d at 366–367. The Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants. *See Commonwealth v. Riley*, 434 Pa.Super. 414, 643 A.2d 1090, 1093 (1994).

**3.** In his argument on appeal, appellant submits that this seemed reasonable as the victim had just returned from an extended stay in the hospital.

**4.** What is interesting about the instant case is that appellant seeks to cross-examine the victim in the hopes of introducing evidence that she *did not* have sex in the relevant time period. Nevertheless, the Rape Shield Statute applies as appellant's questioning implicates the victim's past sexual conduct.

¶ 17 The text of the statute includes one specific exception to its general prohibition of past sexual conduct evidence, regarding the victim's sexual conduct with the defendant where consent of the alleged victim is at issue and the evidence is otherwise admissible. 18 Pa.C.S.A. § 3104(a). However, via interpretive efforts by the courts of this Commonwealth, the Rape Shield Statute has been found to bow to the following exceptions: (1) evidence that negates directly the act of intercourse with which a defendant is charged; (2) evidence demonstrating a witness' bias or evidence that attacks credibility; and (3) evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has motive to lie, fabricate, or seek retribution via prosecution. *Allburn,* 721 A.2d at 367. Appellant asserts that the trial court should have permitted him to ask the victim if she had other recent sexual activity. Appellant hoped such a question would produce a negative response which would bolster his claim of mistaken identity. (*See* appellant's substituted brief at 17–18.)[5]

¶ 18 At the outset, we address the Commonwealth's argument that appellant did not submit a written motion and offer of proof pursuant to Section 3104(b). Rather, prior to trial, appellant offered an oral motion to pierce the Rape Shield Law. (*See* notes of testimony, 12/18/06 at 7.) The Commonwealth contends appellant's failure to submit a written motion and offer of proof is fatal to his claim. Appellant concedes that he failed to file a written motion but states that such inaction is not fatal as he offered an explanation to the trial court for his lack of a written motion and offer of proof and the trial court disposed of his oral motion. (Appellant's substituted brief at 26.)[6]

■ ¶ 19 We have repeatedly stated that a defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof prior to trial. *See Commonwealth v. Beltz,* 829 A.2d 680, 684 (Pa.Super.2003) (failure to make written motion bars review of decision at trial to exclude); *Commonwealth v. Kunkle,* 424 Pa.Super. 499, 623 A.2d 336, 339 (1993), *appeal denied,* 536 Pa. 621, 637 A.2d 281 (1993) (defendant's oral motion during trial, rather than a written motion and specific offer of proof, was wholly inadequate and there was no abuse of discretion by the trial court when it barred evidence pertaining to the prior sexual assault of the victim). We will presume that the

5.  On pages 22 and 23 of his substituted brief, appellant also suggests such cross-examination should have been permitted as it was relevant to the question of bias and whether the victim was accusing appellant at the instigation of her mother in retaliation for her family being evicted. As our review indicates this theory was not presented to the court during his oral proffer, we will not review it on appeal. *See* Pa.R.A.P. 2119(e) (statement of place of raising or preservation of issues); Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

6.  Appellant also counters that the Commonwealth's failure to object to the lack of a written motion results in its waiver of the right to make such an argument. *(Id.)* This analysis is erroneous. An appellee is not charged with the obligation of preserving issues for appeal and cannot be deemed to have waived any argument by not objecting in the lower court. *See Sullivan v. Commonwealth, Department of Transportation,* 550 Pa. 639, 644, 708 A.2d 481, (1998) (general rule that issues not raised in lower court may not be raised on appeal applies only to appellants, not to appellees); *Commonwealth v. Katze,* 540 Pa. 416, 425, 658 A.2d 345, (1995). Further, an appellate court may affirm the lower court on any basis, even one not considered or presented in the court below. *See Commonwealth v. Torres,* 564 Pa. 86, 102–107, 764 A.2d 532, 541–543 (2001).

legislature intended "shall" to be mandatory in the statute at hand. *See generally Commonwealth v. Menezes*, 871 A.2d 204, 209 (Pa.Super.2005), *appeal denied*, 586 Pa. 724, 890 A.2d 1057 (2005). Again, the rape shield laws, as enacted by the various states, "were intended to end the abuses fostered by the common law rule by limiting the harassing and embarrassing inquiries of defense counsel into irrelevant prior sexual conduct of sexual assault complainants." *Commonwealth v. Nieves*, 399 Pa.Super. 277, 582 A.2d 341, 346 (1990), *appeal denied*, 529 Pa. 633, 600 A.2d 952 (1991). The requirement of a specific proffer of evidence was designed to prevent a "fishing expedition" into the areas protected by the Rape Shield Law. *Commonwealth v. Wall*, 413 Pa.Super. 599, 606 A.2d 449, 457 (1992), *appeal denied*, 532 Pa. 645, 614 A.2d 1142 (1992). *Accord Commonwealth v. Fernsler*, 715 A.2d 435, 439 (Pa.Super.1998).

> In determining whether the application of the Rape Shield Law violates a defendant's constitutional rights to confront and cross-examine witnesses against him, this court has recently held:
>
> > In Pennsylvania, we have come to resolve this question through a relatively elaborate procedure which is designed to ensure that no evidence of the victim's sexual history is introduced unless and until it can be established that to exclude such evidence would lay victim to the very raison d'etre of the trial itself: the pursuit of truth. The process begins with the defendant submitting a specific proffer to the court of exactly what evidence he or she seeks to admit and precisely why it is relevant to the defense. This procedure forces the defendant to frame the precise issues and interests involved, and prevents him or her from embarking upon 'fishing expedition style intrusions on

Rape Shield Law protections.' Where the proffer is but vague and conjectural, evidence of the victim's past sexual conduct will be excluded and no further inquiry need be entertained.

*Kunkle, supra,* quoting *Wall,* 606 A.2d at 457 (citations omitted).

¶ 20 In the instant case, there was no written motion and offer of proof filed regarding the specific evidence appellant wished to introduce by questioning the victim. We agree with the Commonwealth that appellant's attempt to present such evidence on the eve of trial was in direct violation of the Rape Shield Law. *See Beltz, supra; Kunkle, supra.* More importantly, even excusing the lack of a written motion, our review of the record leads to the conclusion that the oral offer of proof presented at trial by defense counsel was wholly inadequate to meet the specific proffer required. *See Beltz, supra.*

¶ 21 For instance, appellant did not inform the trial court that he was aware of any specific acts of past sexual conduct engaged in by the victim around the same time of the assault that would somehow exonerate him. Nor did the defense proffer evidence he intended to elicit from such an inquiry as to the specific *lack* of sexual conduct. Appellant did not argue to the trial court, as he does in his appellate brief, the theory that since the victim had been released from the hospital a week prior to the attack that she probably had not recently had sex. Rather, appellant sought permission "to question [the victim] as to [the] who, what, where and when of this depositing of DNA on her shorts." (Notes of testimony, 12/18/06 at 17.) Appellant averred that he believed "this was a fair area of inquiry in order for the jury to understand how somebody else's DNA got on [the victim's] shorts, and to make arguments that somebody else deposited

the DNA on her shorts, and that she's mistaken that [he] is the person that was in her room." (*Id.* at 17–18.)

¶ 22 After reviewing appellant's proffer, we find that he supplied the court with only vacuous assertions. Conversely, in *Fernsler*, the defendant offered evidence that the child-victim, his son, had a motive to fabricate the charges against him. *Fernsler*, 715 A.2d at 440. The child-victim was himself accused of sexually assaulting a younger sibling. The defendant proffered that the child-victim, who was in a program for juvenile sex offenders for conduct towards his half-sister, fabricated the allegations of defendant-father's abuse in order to receive lenient treatment. The court concluded that the defendant's proffers were sufficiently specific to warrant examination. *Id.* Likewise, in *Commonwealth v. Majorana*, 503 Pa. 602, 609–611, 470 A.2d 80, 84 (1983), the defendant had made a specific offer to prove through the testimony of an identified third person that the semen and sperm detected in the victim's body, which had been offered as evidence to corroborate the victim's testimony, had actually come from a separate source two hours before the victim was allegedly raped.

¶ 23 Here, it is clear that appellant was on a "fishing expedition," without any certainty of what he would find. We agree with the Commonwealth that appellant's "unwritten proffer was based on nothing more than conjecture and speculation— according to [appellant], the victim may have (or may not have) engaged in prior sexual conduct that might have explained the presence of a third person's ... DNA on her shorts." (Commonwealth's substituted brief at 14.) *See Commonwealth v. Fink*, 791 A.2d 1235, 1243 (Pa.Super.2002)

(trial court did not abuse its discretion in precluding defendant from piercing rape shield where his proffer was nothing more than "a vague suggestion that sexual activity was taking place between the victim and [an] unidentified male."); *Commonwealth v. Sanders*, 420 Pa.Super. 479, 617 A.2d 5 (1992) (sufficient proffer was not presented to pierce rape shield where defendant sought to question victim and medical witness as to whether the victim was a virgin prior to the rape in an effort to explain why the victim's hymen was not found to be intact; defendant "was clearly on a fishing expedition, without any certainty of what he would find" and the Rape Shield Statute prohibits such questioning in the absence of something more than speculation); *Nieves, supra* (defendant's assertion that cross-examination of victim on the issue of her sexual conduct might provide alternate explanation as to how she contracted gonorrhea was nothing more than a "fishing expedition" and insufficient to warrant piercing the Rape Shield Statute).

■ ¶ 24 Alternatively, we find no abuse of discretion by the trial court in rejecting appellant's attempt to pierce the Rape Shield Law. The offer of proof does not directly negate the sexual assault nor does it establish the victim's bias or attack her credibility. In reality, the offer of proof demonstrates that the victim might have engaged in sexual activity with another person whose DNA was left on the shorts in addition to being assaulted by appellant. Such evidence would not be relevant to a misidentification defense.[7] Moreover, if the victim testified that she *did not* have sex before the attack, such evidence does not directly negate the sexual assault. Again, the DNA results, which were intro-

---

7. In fact, if the victim testified that she had participated in recent consensual sexual activity and the saliva was linked to her partner, appellant could no longer assert that the saliva came from her attacker.

duced at trial, and of which the jury was fully informed, already conclusively ruled out appellant as the source.

¶ 25 Questioning the victim about her sexual encounters was not needed to establish that appellant was not linked to the DNA evidence. Appellant had an opportunity to argue, and in fact did argue, that the saliva must have come from the attacker. The DNA residue was not being offered as evidence of appellant's guilt.[8] *See Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989) (evidence that other persons might also have had sexual contact with the four-year-old victim, which would not have proved exculpatory of the defendant, was properly refused as being irrelevant); *Nieves, supra* (evidence that merely provides an alternate source for the evidence of sexual abuse without precluding the defendant's guilt is inadmissible).

¶ 26 Additionally, the testimony which the defense apparently sought on cross-examination would have also been incredibly weak in light of the other testimony of record. Appellant's own nephew placed him at the scene and confirmed the victim's testimony regarding what she said aloud upon waking up during the attack. In contrast with the prejudicial nature of the testimony sought to be elicited, its probativeness was inferior and attenuated.

## WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

¶ 27 Next, appellant argues that the verdict was against the weight of the

evidence because the DNA evidence showed that none of the saliva found on the victim's shorts was his.[9]

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact ... thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, ... rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Kim,* 888 A.2d 847, 851 (Pa.Super.2005), *appeal denied,* 587 Pa. 721, 899 A.2d 1122 (2006) (citations and quotations omitted).

¶ 28 This claim fails as the jury could have believed, based on the evidence admitted, that appellant was the attacker but did not leave behind any saliva or his saliva did not transfer to the victim's shorts. Moreover, as the Commonwealth correctly points out, appellant's weight claim is foreclosed by this court's decision in *Commonwealth v. Wall,* 953 A.2d 581 (Pa.Super.2008), *appeal denied,* 600 Pa. 733, 963 A.2d 470 (2008). In that case, Wall was charged with raping a 12–year–

---

**8.** Unlike *Majorana, supra,* and *Commonwealth v. Jorgenson,* 512 Pa. 601, 517 A.2d 1287 (1986), the physical evidence introduced, the victim's shorts, was not used to link appellant to the crime. In those cases, it was held that evidence as to consensual intercourse was admissible to explain the presence of semen and sperm in the victim's vagina rather than from the alleged rape. Thus, in *Majorana* and

*Jorgenson,* evidence of prior sexual conduct was necessary to prove an alternate explanation for the presence of physical evidence that the prosecution was using to establish the charged assault occurred.

**9.** Appellant preserved this claim in post-sentence motions. Pa.R.Crim.P. 607.

old girl. Although no sperm was found inside the victim after the attack, sperm was found on her panties. DNA testing, however, excluded Wall as the depositor of that sperm. *Id.* at 586. Nonetheless, Wall was convicted of rape and related charges.

¶ 29 On appeal, Wall argued that the verdict was against the weight of the evidence because it conflicted with the physical evidence. We rejected this argument and concluded that the DNA evidence established a plausible alternative theory that contradicted the victim's testimony. However, it did not require the conclusion that Wall did not rape the victim.

> Where an appellant argues that physical evidence is 'inconsistent' with a victim's testimony, but that evidence does not necessarily exculpate him, the fact-finder may entertain a defendant's alternative theory and reasonably reject it. In such instances, we will not substitute the fact-finder's judgment with our own.

*Id.* (citations omitted); *see also Commonwealth v. Jennings*, 958 A.2d 536 (Pa.Super.2008) (rejecting weight of evidence claim and upholding rape conviction where physical evidence was inconsistent with victim's testimony). Thus, we reject appellant's challenge to the weight of the evidence.

### WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS OF IDSI AND AGGRAVATED ASSAULT

¶ 30 Finally, appellant argues that the evidence was insufficient to support his convictions of IDSI and aggravated assault because the Commonwealth failed to prove that the victim was unconscious or unaware at the time of the incident. Appellant, however, failed to present this claim in his Pa.R.A.P.1925(b) statement. There-fore, it is waived. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998).

¶ 31 Appellant also argues that the evidence failed to prove that the victim was actually penetrated during the incident. This claim is belied by the record. The victim testified that she felt a "poke" and a "slight penetration" before seeing appellant's head between her legs. (Notes of testimony, 12/19/06 at 54.) Testimony was also presented that the victim reported to the police that appellant licked her vagina several times. (Notes of testimony, 12/20/06 at 25–27.) The evidence was sufficient to prove the "penetration, however slight" element of the crimes. 18 Pa. C.S.A. § 3123, § 3125(a); *Commonwealth v. Hawkins*, 419 Pa.Super. 37, 614 A.2d 1198, 1200 n. 1 (1992).

¶ 32 Judgment of sentence affirmed.

¶ 33 BENDER, J. concurs in the result. DONOHUE, J. concurs in the result.