J-S51034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRIS DUNBAR, | |
| Appellant | No. 1834 EDA 2014 |

Appeal from the Judgment of Sentence May 29, 2014
in the Court of Common Pleas of Lehigh County
Criminal Division at No.: CP-39-CR-0002187-2013

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 08, 2015**

Appellant, Chris Dunbar, appeals from the judgment of sentence imposed following his jury conviction of one count each of involuntary deviate sexual intercourse, 18 Pa.C.S.A. § 3123(a)(1); terroristic threats, 18 Pa.C.S.A. § 2706(a)(1); simple assault, 18 Pa.C.S.A. § 2701(a)(1); and resisting arrest, 18 Pa.C.S.A. § 5104.  Appellant challenges the denial of his request to introduce certain evidence despite the Rape Shield Law.[1]  We affirm.

We derive the following recitation of facts from the trial court's opinion and our independent review of the record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3104.

Appellant and the victim, D.S. (Victim), lived together in a romantic relationship from 2010 until January 2013, when Appellant moved out of their home. (*See* N.T. Trial, 2/05/14, 47-48). Victim continued to live there with her four children. (*See id.*).[2] Victim testified that after they separated, they agreed to keep things as normal as possible and "co-parent" the four children. (*Id.* at 67).

On the weekend at issue, Appellant was to bring the children (who had been staying with him) to spend Mother's Day with Victim, on Sunday, May 12, 2013 at 10:00 A.M. (*See id.* at 66-67). However, Appellant arrived with the children at 2:00 A.M. He found Victim on her porch with a male friend. (*See id.* at 67-68).

Appellant became enraged, yelled at Victim, and accused the friend of being the reason he and Victim did not reconcile. (*See id.* at 68). The Victim's friend left. (*See id.* at 69). The Victim fled to her bedroom and locked the door as Appellant brought the children inside. (*See id.* at 70).

When Appellant knocked on the bedroom door and requested that he and Victim talk, she let him in. (*See id.* at 71-72). Once inside, Appellant shook Victim and ripped her shirt off. (*See id.* at 73-74). He forcibly removed all of her clothes, even though she repeatedly told him "Please stop." (*Id.* at 74-75).

_____

[2] Appellant is the father of the youngest child; he testified that he acted as a father for the others as well. (*See* N.T. Trial, 2/06/14, 226).

- 2 -

Appellant threw Victim across the room at a dresser. (*See id.* at 76). She screamed for her eldest daughter to call 911. (*See id.*). Appellant continued hitting Victim. (*See id.* at 77). She continued to call out to her daughter until Appellant hit her face and held his hand over her mouth and nose, cutting off her air so she could not breathe. (*See id.* at 78).

Appellant went into the closet, retrieved a "sex toy,"[3] and said to Victim, "I'm gonna teach you." (*Id.* at 81). Appellant hit Victim in the face using the harder part of the sex toy, and began to insert it into her vagina. (*See id.* at 82). Victim testified at trial that the sex toy hurt as it went in. (*See id.* at 83). Appellant gripped Victim's neck, choking her, and said, "Right now I am deciding whether or not to kill you . . . ." (*Id.* at 85). Appellant then said "I'm gonna make you suffer first." (*Id.*) Appellant put his full body weight against Victim, punched her in the stomach, and continued to insert the sex toy into her vagina. (*See id.* at 86).

The violence continued until almost seven in the morning, when Appellant fell asleep and Victim was able to text a friend to call 911. (*See id.* at 109, 112). When the police arrived, they found Victim bloody and bruised. Appellant was still in the home. (*Id.* at 119-20, 124-25). The police told Victim to go to the hospital. Her friend drove her there. (*See id.* at 123).

---

[3] The sex toy was a battery operated vibrator. (*See* N.T. Trial, 2/05/14, 81-82).

Allentown Police Officer Leif Henry arrested Appellant. (*See* N.T. Trial, 2/06/14, at 139). Although he was handcuffed from behind, Appellant managed to slip the cuffs in front of him, presenting a greater danger to the police. (*See id.* at 140). Appellant told the police, "You're going to have to shoot me. You're going to have to kill me." (*Id.* at 141).[4] Appellant then ran from the police, but the police were able to re-capture him. (*Id.* at 143).

At the hospital, Dr. Joseph DeFulvio, a gynecologist, examined Victim. (*See* N.T. Trial, 2/05/14, at 136, 138-39). Later, Dr. DeFulvio, accepted without objection at trial as an expert, opined that the injuries to Victim's vagina were greater than what he would expect to see from consensual sex or masturbation. (*See id.* at 138, 143). Dr. DeFulvio testified that, in his expert opinion, the swelling of the vagina was "more consistent with external use with force versus consensual intercourse." (*Id.* at 150). On cross-examination, Appellant's counsel questioned Dr. DeFulvio about the possibility that consensual sex could produce the same results. (*See id.* at 150-51).

---

[4] Appellant later testified that it was his violent alter ego, "Christopher," that had said this. (*See* N.T. Trial, 2/06/14, at 290). Christopher is one of Appellant's three alter egos that he claims to host in his body. (*See* N.T. Trial, 2/05/14, at 54-55).

The court barred Appellant's counsel from questioning Victim about whether she had engaged in consensual sex earlier on the evening of the incident. (*See id.* at 130). The court cautioned counsel that Victim was protected from this line of questioning. (*See id.*).

On February 7, 2014, the jury convicted Appellant of involuntary deviate sexual intercourse, terroristic threats, simple assault, and resisting arrest.[5] On May 29, 2014, the court sentenced Appellant to an aggregate term of not less than thirteen-and-a-half years' nor more than twenty-nine years' incarceration, plus costs and fees[6]. Appellant timely appealed on June 24, 2014.[7]

Appellant raises one question for our review:

> Did the [trial] court err and abuse its discretion in applying the Rape Shield statute (18 Pa.C.S.A. § 3104) to preclude otherwise admissible evidence of the alleged victim's prior sexual activity occurring only hours before the alleged incident when such sexual activity would establish a plausible alternate cause of the victim's physical condition and serve to impeach her credibility?

_____

[5] The jury acquitted Appellant of attempted criminal homicide, 18 Pa.C.S.A. § 901(a); and aggravated assault, 18 Pa.C.S.A § 2702. (*See* N.T. Trial 2/07/14 at 106).

[6] Appellant was also required to register as a Tier 3 lifetime sex offender. (*See* N.T. Sentencing, 5/29/14, at 22). However, he was not assessed to meet the criteria of a sexually violent predator. (*See id.* at 3).

[7] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on July 17, 2014. *See* Pa.R.A.P. 1925(b). The court filed a Rule 1925(a) opinion on July 23, 2014. *See* Pa.R.A.P. 1925(a).

(Appellant's Brief, at 4) (most capitalization omitted).

Appellant asserts that the trial court erred and abused its discretion by not admitting evidence of the Victim's prior sexual activity. Specifically, he claims that the trial court erred and abused its discretion by applying the Rape Shield Law to exclude evidence of the Victim's sexual intercourse with her friend a few hours prior to his assault of her. (*See id*. at 7). We disagree.

Our standard of review for a claim of admissibility of evidence under the Rape Shield Law is well settled:

> A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. 2009), *appeal denied*, 8 A.3d 341 (Pa. 2010) (citation and quotation marks omitted).

Preliminarily, we must address Appellant's failure to raise a proper claim of exception to the Rape Shield Law.

The Pennsylvania Crimes Code provides, in pertinent part, as follows:

> (a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct

with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) **Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) **shall file a written motion and offer of proof at the time of trial**. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an *in camera* hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104 (emphasis added).

Accordingly, § 3104(b) requires a defendant who wishes to introduce evidence of an alleged victim's past sexual conduct must file a **written** motion before trial. This motion must offer proof that an *in camera* hearing is necessary to record relevant and admissible findings. ***See id.*** "[A] defendant who desires to introduce evidence of the victim's prior sexual conduct must file a **written motion** and make a **specific offer** of proof prior to trial." ***Burns, supra***, at 690 (emphasis added) (citations omitted). "The requirement of a specific [written] proffer of evidence was designed to prevent a 'fishing expedition' into the areas protected by the Rape Shield Law." *Id.* at 691 (citations omitted).

Here, as aptly noted by the Commonwealth, Appellant failed to file a written motion to pierce the rape shield exclusion. (**See** Commonwealth's Brief, at 10). Specifically, Appellant failed to request an exception to the Rape Shield Law or offer pertinent proof of the Victim's past sexual conduct

by written motion when he did not include it in his omnibus pre-trial motion. (**See generally**, Omnibus Pre-Trial Motion, 8/02/13, at unnumbered pages 1-6).

Instead, Appellant's counsel only informally requested to pierce the rape shield during a recess at trial. (**See** N.T. Trial, 2/05/14, at 126-33).[8] Therefore, because Appellant failed to file a timely written motion, as required by law, to pierce the rape shield, the issue on appeal is waived.

> We have repeatedly stated that a defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof prior to trial. **See Commonwealth v. Beltz**, 829 A.2d 680, 684 (Pa. Super. 2003) (failure to make written motion bars review of decision at trial to exclude); **Commonwealth v. Kunkle**, 424 Pa.Super. 499, 623 A.2d 336, 339 (1993), *appeal denied,* 536 Pa. 621, 637 A.2d 281 (1993) (defendant's oral motion during trial, rather than a written motion and specific offer of proof, was wholly inadequate and there was no abuse of discretion by the trial court when it barred evidence pertaining to the prior sexual assault of the victim). We will presume that the legislature intended "shall" to be mandatory in the statute at hand. **See generally Commonwealth v. Menezes**, 871 A.2d 204, 209 (Pa. Super. 2005), *appeal denied,* 586 Pa. 724, 890 A.2d 1057 (2005). Again, the rape shield laws, as enacted by the various states, "were intended to end the abuses fostered by the common law rule by limiting the harassing and embarrassing inquiries of defense counsel into irrelevant prior sexual conduct of sexual assault complainants." **Commonwealth v. Nieves**, 399 Pa. Super. 277, 582 A.2d 341, 346 (1990), *appeal denied,* 529 Pa. 633, 600 A.2d 952 (1991). The requirement of a specific proffer of evidence was designed to prevent a "fishing expedition" into the areas protected by the Rape Shield Law. **Commonwealth v. Wall**, 413 Pa. Super. 599, 606 A.2d 449,

---

[8] After argument from counsel, the trial court denied that request. (**See** N.T. Trial, 2/05/14, at 132-33).

457 (1992), *appeal denied,* 532 Pa. 645, 614 A.2d 1142 (1992). **Accord Commonwealth v. Fernsler***,* 715 A.2d 435, 439 (Pa. Super. 1998).

**Burns**, **supra** at 690-91.

Moreover, Appellant's claim would not merit relief. Proffered evidence relating to past sexual conduct of an alleged victim "can not (sic) be vague, conjectural, or speculative." **Commonwealth v. Fink**, 791 A.2d 1235, 1243 (Pa. Super. 2002) (citation omitted) (trial court did not abuse its discretion in precluding defendant from piercing rape shield where proffer was nothing more than "a vague suggestion that sexual activity was taking place between the victim and [an] unidentified male.")

Additionally, "evidence that merely provides an alternative source for the evidence of sexual abuse without precluding the defendant's guilt is inadmissible." **Burns, supra**, at 693 (citing **Commonwealth v. Nieves**, 582 A.2d 341, 347 (Pa. Super. 1990)), *appeal denied*, 600 A.2d 952 (Pa. 1991).

"The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." **Burns, supra**, at 689 (citation and footnote omitted). This Court explained that the intent of the Rape Shield Law is to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault victims. **See id.**

> In Pennsylvania, we have come to resolve this question through a relatively elaborate procedure which is designed to ensure that

no evidence of the victim's sexual history is introduced unless and until it can be established that to exclude such evidence would lay victim to the very *raison d'etre* of the trial itself: the pursuit of truth.

*Id.* at 691 (citations omitted).

Similarly,

[T]he Rape Shield law will bow to a defendant's right to confront and cross-examine when a specific proffer demonstrates that the proposed inquiry is intended to elicit relevant evidence, which is more probative than prejudicial, and which is not cumulative of other evidence available without encroaching upon Rape Shield law protections.

*Nieves, supra*, at 347.

Here, Appellant claims that the trial court abused its discretion and erred in applying the Rape Shield Law when it denied admission of the evidence of prior sexual intercourse. (*See* Appellant's Brief, at 13). He maintains that evidence of a previous sexual encounter on the night in question could provide an alternate theory for Victim's vaginal injuries. (*See id.* at 22; *see also* N.T. Trial, 2/05/14, at 132).

However, in this case, at most, evidence of the Victim's prior sexual relations would have merely provided an alternative source for the evidence of sexual abuse, without precluding Appellant's guilt. Therefore, it is inadmissible for that reason as well. The trial court properly applied the Rape Shield Law by denying admission of evidence of the Victim's previous sexual conduct. *See Burns*, *supra* at 693.

Moreover, the trial court cited testimony from Dr. DeFulvio that the vaginal injuries were not consistent with the type that would normally result from consensual intercourse. (*See* Trial Court Opinion, 7/23/14, at 4).

Therefore, the proffered evidence of previous sexual relations was not probative, without more, of an alternative explanation for the Victim's injuries. The vague and speculative proposed line of questioning would merely have permitted defense counsel to embark upon "fishing expedition style intrusions on Rape Shield Law protections." *Burns, supra*, at 691. "Where the proffer is but vague and conjectural, evidence of the victim's past sexual conduct will be excluded and no further inquiry need be entertained." *Id.* (citations omitted).

Accordingly, we conclude that the trial court properly denied the admission of the evidence under the Rape Shield Law. Appellant's claim is waived and without merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/8/2015