J-S29022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DONI TODD SHUE | : | |
| | : | |
| Appellant | : | No. 169 MDA 2023 |

Appeal from the Judgment of Sentence Entered January 12, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0004146-2019

BEFORE:   MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED AUGUST 30, 2023**

Appellant, Doni Todd Shue, appeals *nunc pro tunc* from the judgment of

sentence entered in the York County Court of Common Pleas, following his

jury trial convictions for aggravated indecent assault of a child, aggravated

indecent assault (person less than 13 years old), indecent assault (without

consent), and indecent assault (person less than 13 years old).[1]  We affirm.

In its opinion, the trial court set forth the relevant facts and procedural

history of this case as follows:

> The jury trial was held from September 28, 2020, through
> October 1, 2020.  Testimony revealed that [Appellant]
> touched M.S. [("Victim")] inappropriately.  [Appellant] is
> [Victim's] grandfather.  [Appellant] touched [Victim] in her

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3125(b); 3125(a)(7); 3126(a)(1); and 3126(a)(7),
respectively.

private areas with his hands. [Appellant's] hand movement was going straight up and down on the inside of [Victim]. The touching was also described as a sawing motion but in a direction of going straight up and down.

The first incident occurred on February 8, 2019, when [Victim] was downstairs at [Appellant's] home, in the basement-like-area, roller skating. [Victim] was sitting and laying back on an air mattress, when [Appellant] pulled down her pants to her ankles. [Victim's] clothes and underwear were taken off by [Appellant]. When [Appellant] stopped touching [Victim], he told her "please don't tell anybody." [Victim] identified [Appellant] as the man who sexually assaulted her.

[Victim's] mother, (herein "Mother"), witnessed [Victim] have an anxiety attack after telling [Victim] she was going back to [Appellant's] house on the following morning. [Victim] testified that the sexual assault by [Appellant] induced her panic attack. 9-1-1 was called and an ambulance came to evaluate [Victim]. At the time when E.M.S. arrived to evaluate [Victim], Mother did not know what was going on with [Victim]. Mother decided to take [Victim] to the hospital because of the panic attack.

Mother asked [Victim] what was wrong because of [Victim's] age; Mother was perplexed as to why [Victim] would have a panic attack. [Victim] started crying, and explained to Mother, "they told me not to tell you." When Mother asked who is "they," [Victim] responded "who you were just on the phone with." Mother asked again who [Victim] was referring to, in which she identified [Appellant]. [Victim] told Mother [that Appellant] had touched her; then [Victim] pointed to her private area when Mother asked where [Appellant] had touched her. [Victim] disclosed to Mother, on May 28, 2018, [Appellant] also touched [Victim] on a different occasion. Mother then took [Victim] to the hospital to be evaluated.

A SAFE exam was performed on [Victim]. The SAFE exam nurse asked [Victim] why she was brought to the hospital in which [Victim] stated "because I was scared because my grandpa was touching me where he shouldn't be touching me on my pee-pee. I asked him to stop but he didn't. He pulled my pants down to here." The SAFE nurse, Brandi

- 2 -

Castro (herein "Ms. Castro"), went on to explain that [Victim] "placed both hands just below her knees and started touching, and she clarified pee-pee." [Victim] told Ms. Castro, that when [Appellant] stopped, [Appellant] told her "please don't tell anyone." [Victim] continued:

I tried to keep it to myself, but my mom said that I can tell her anything, so I told her. And she called my dad and told him [that] her dad [Appellant] touched my private parts. [Appellant] poked it in the hole, and I started getting in pain. [Appellant] did it on both Tuesdays. [Appellant] starts at my ankles and goes up and down.

(Trial Court Opinion, filed 4/12/21, at 2-5) (internal citations omitted).

During trial, Appellant sought to introduce evidence that another family member had touched Victim inappropriately. Specifically, Appellant sought to testify that he had informed his daughter (Victim's mother) that he previously witnessed Victim's uncle engage in inappropriate sexual conduct with Victim. This issue was discussed twice at trial:

Prior to opening statements, trial counsel raised the issue of [Appellant] claiming he saw another family member sexually assaulting [Victim]. N.T. Jury Trial, September 28, 2020, p. 69. Trial counsel alluded that through [Appellant's] testimony, [Appellant] would explain what [Appellant] was going through and stating [Appellant's] version of events that happened with [Victim].[2] *Id.* at 72.

> [2] [Appellant] testified that when [Victim] was in the basement-like area roller-skating she ended up rolling backwards and hit herself in the head with the skates. N.T. Jury Trial, October 1, 2020, p. 364. [Appellant] then claims, to stop [Victim] from crying he jumped on the mattress and started tickling her. *Id.* at 364-65. [Appellant] then testified his head was turned to the side in an attempt to block the skates from hitting him while [Appellant] tickled [Victim]. *Id.* at 365. Then [Victim] "hit [Appellant] with the skates, and

- 3 -

[Appellant's] hand went down and smacked her down in [Victim's] groin area." *Id.* at 366.[2]

Trial counsel alluded that after the incident with [Victim] and the skates, [Appellant] got up because he was:

angry because what was going through his mind was something that he witnessed, something he walked into involving this child and this child's, I guess, uncle, for lack of a better term [uncle by marriage]…[t]hat appeared to be inappropriate and had addressed it with the child's mother about six months prior to this.

\* \* \*

Again, [Appellant's] going to say what was going through his mind was when he walked into the room and saw this child wearing only a pair of underwear on top of her uncle who is wearing a pair of shorts on the couch thinking it was okay, and that explained his actions what he told the child, why he told the child and why he walked away.

*Id.* at 72-73.

The court and trial counsel went into a discussion of the allegation by [Appellant] that the uncle assaulted [Victim], not [Appellant]. *Id.* at 73-77. Throughout the discussion of both the Rape Shield Act and the issue of relevance, the court stated it did not want this issue raised during opening statements until further case law was provided by counsel. *Id.* at 77. …

This issue was brought up a second time prior to the jury entering the court room. N.T. Jury Trial, September 29,

---

[2] Appellant further claimed that after he accidentally touched Victim's groin area, Victim responded that it was "okay." Appellant testified that Victim's reaction upset him, because it should not be "okay" for anyone to touch Victim's private area. Appellant then went on to discuss "good touch/bad touch" with Victim and directed Victim not to mention what happened to anyone until Appellant had a chance to discuss the incident with Victim's mother. (*See id.* at 366-68).

2020, p. 118. The same topic, as discussed above, was of [Appellant's] trial counsel arguing why [Appellant] should be allowed to testify about his "knowledge" of the uncle sexually assaulting [Victim]. *Id.* at 118-20. The Commonwealth responded that it would fall under 18 [Pa.C.S.A.] § 3104, the Rape Shield Law. *Id.* at 120-21. The Commonwealth further argued if the court got past the Rape Shield statute under § 3104, the testimony [Appellant] intended to offer was not relevant, was more prejudicial than probative, and that [Appellant] could still explain his own conduct without getting into [Appellant's] claims of what [Appellant] deemed as past victimization of [Victim]. *Id.*

The [court then ruled as follows]:

> THE COURT: Again, [trial counsel], I don't know the exact details of what your client did or didn't do when he allegedly observed this behavior six months ago other than your statement that he told the mother. He apparently didn't tell police. He didn't have it investigated. Nothing's happened. This child hasn't reported it. It's never been corroborated by anyone else. I'm not letting it in. I don't find it to be relevant.

(Trial Court Opinion at 8-11).

On October 1, 2020, the jury convicted Appellant of the above-mentioned crimes. The court sentenced Appellant on January 12, 2021, to an aggregate term of 10 to 20 years' imprisonment plus three (3) years' probation. Appellant timely filed a notice of appeal on February 5, 2021. On February 10, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On March 1, 2021, Appellant filed his Rule 1925(b) statement. Appellant subsequently discontinued the appeal. On December 29, 2022, the court reinstated Appellant's appellate

rights *nunc pro tunc* limited to the issue raised in Appellant's March 1, 2021 Rule 1925(b) statement. Appellant timely filed a *nunc pro tunc* notice of appeal on January 27, 2023. On January 30, 2023, the court issued a Rule 1925(b) order; Appellant filed his Rule 1925(b) statement on February 15, 2023.[3]

Appellant raises one issue for our review:

> Whether the trial court erred and committed an abuse of discretion in denying Appellant's request to introduce evidence that another family member engaged in inappropriate activity with the complainant.

(Appellant's Brief at 4).

Appellant argues that the evidence sought to be admitted does not exploit Victim's sexuality. Appellant claims the proffered evidence was being brought in to describe why an accidental touching during tickling became a "major event." Appellant asserts that he sought to introduce the proffered evidence to explain why Appellant pointed out to and apologized for accidentally touching Victim's vaginal area. Appellant emphasizes that he went out of his way to discuss with Victim that no one should touch her vaginal area. Appellant maintains that "[t]his was all prompted by him seeing [Victim]

_____

[3] We note that Appellant raises different claims in his February 15, 2023 Rule 1925(b) statement than the issue asserted in his March 1, 2021 Rule 1925(b) statement. Nevertheless, because the sole issue raised on appeal is preserved in the March 1, 2021 concise statement for which the court reinstated Appellant's appellate rights *nunc pro tunc*, we see no impediment to our review on this ground.

in a compromising situation with another family member." (**Id.** at 14-15). Appellant insists the evidence was relevant. Appellant avers the proffered evidence was not "rape shield evidence." Appellant contends the proffered evidence was not a past sexual victimization but was a concern for a child and the possibility of future victimization. Appellant submits that he wanted to discuss good touch/bad touch so that Victim knew not to let anyone touch her vaginal area or to report it if someone does. Appellant suggests that "[b]ecause of the past event, Appellant turned an accidental touching into a big deal[,] into a scary situation." (**Id.** at 15). Appellant concludes that the court erroneously excluded his proffered evidence, his defense suffered as a result, and this Court must grant a new trial. We disagree.

Our standard of review regarding the admission of exclusion of evidence is well settled:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

**Commonwealth v. Antidormi**, 84 A.3d 736, 749 (Pa.Super. 2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014) (internal citations omitted).

The Rape Shield Law provides:

**§ 3104.  Evidence of victim's sexual conduct**

**(a) General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, **past sexual victimization, allegations of past sexual victimization**, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct **shall not be admissible in prosecutions of any offense listed in subsection (c)** except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

**(b) Evidentiary proceedings.—**A defendant who proposes to offer evidence of the alleged victim's past sexual conduct, **past sexual victimization, allegations of past sexual victimization**, opinion evidence of the alleged victim's past sexual conduct and reputation evidence of the alleged victim's past sexual conduct pursuant to subsection (a) **shall file a written motion and offer of proof at the time of trial**.  If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an *in camera* hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S.A. § 3104(a)-(b) (emphasis added).  Subsection (c) provides that this statute applies to prosecutions relating to sexual offenses.  **See** 18 Pa.C.S.A. § 3104(c).

"The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim.  The Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complaints." **Commonwealth v. Burns**, 988 A.2d 684, 689 (Pa.Super. 2009) (*en banc*),

- 8 -

*appeal denied*, 608 Pa. 615, 8 A.3d 341 (2010) (internal citation omitted).

> The text of the statute includes one specific exception to its general prohibition of past sexual conduct evidence, regarding the victim's sexual conduct with the defendant where consent of the alleged victim is at issue and the evidence is otherwise admissible. 18 Pa.C.S.A. § 3104(a). However, via interpretive efforts by the courts of this Commonwealth, the Rape Shield Statute has been found to bow to the following exceptions: (1) evidence that negates directly the act…with which a defendant is charged; (2) evidence demonstrating a witness' bias or evidence that attacks credibility; and (3) evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has motive to lie, fabricate, or seek retribution via prosecution.

*Id.* at 690.

Further, "a defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof prior to trial." *Id.* Regarding the requirement to file a written motion, "[w]e will presume that the legislature intended 'shall' to be mandatory[.]" *Id.* at 690-91. Thus, a defendant's oral motion to introduce evidence of a victim's past sexual conduct, rather than written motion, is inadequate. *See id.* (collecting cases).

Instantly, the Commonwealth contends that Appellant failed to properly seek admission of evidence involving Victim's past sexual victimization where he failed to file a **written** pre-trial motion to admit such evidence. (*See* Commonwealth's Brief at 12-13). We agree with the Commonwealth's position. The record makes clear Appellant did not file a written motion seeking to admit evidence of Victim's past sexual victimization (or allegations

of Victim's past sexual victimization), but only moved orally to admit such evidence during trial. Under these circumstances, exclusion of the proffered evidence was proper. *See* 18 Pa.C.S.A. § 3104(b); **Burns, supra**. We may affirm the trial court's ruling on any basis. **See id.** at 690 n.6.

Moreover, the trial court reasoned:

> [Under the Rape Shield Law, Appellant's] testimony of him walking in on the uncle and [Victim], as described above, and believing it to be an inappropriate sexual incident is not admissible as it would be evidence of [Victim's] past sexual victimization and/or allegations of past sexual victimizations.
>
> If the Superior Court believes § 3104 does not apply, the testimony is still excluded under the issue of relevance.
>
> \* \* \*
>
> This [c]ourt determined that the statement by [Appellant] would be self-serving and since there was no other evidence to support [Appellant's] statement, irrelevant. Therefore, [Appellant's] testimony, a self-serving statement, would simply distract the jury from the sole legal question of whether [Appellant] sexually abused [Victim], and as such, was inadmissible.

(Trial Court Opinion at 13-16).

We agree with the court's analysis. The proffered evidence clearly falls under the category of "past sexual victimization" or "allegations of past sexual victimization," as Appellant sought to testify regarding an incident where he witnessed Victim's uncle touch her inappropriately. **See** 18 Pa.C.S.A. 3104(a). As well, the proffered evidence does not fall under the limited statutory exception, as the past victimization is not related to Appellant's prior

sexual conduct with Victim. *See id.*; *Burns, supra*. Further, the proffered evidence was not being offered to challenge Victim's credibility, to suggest that she had a motive to lie or fabricate the allegations, or to directly negate Appellant's conduct. *See id.* Rather, Appellant sought to admit the proffered evidence solely to explain Appellant's state of mind and why he was explaining "good touch/bad touch" to Victim after Appellant allegedly touched her private parts accidentally while tickling her. Thus, even if Appellant had properly filed a written motion seeking to admit the proffered evidence, the trial court properly excluded it as prohibited by the Rape Shield Law. *See* 18 Pa.C.S.A. § 3104(a); *Burns, supra*. Finally, we see no abuse of discretion in the court's determination that the proffered evidence would have been inadmissible on relevance grounds in any event. *See Antidormi, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/30/2023

- 11 -