J-S21021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DALONZO ZEPPRINANS | : | |
| | : | |
| Appellant | : | No. 1815 EDA 2020 |

Appeal from the PCRA Order Entered August 26, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0015788-2008

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED JANUARY 11, 2022**

Appellant, Dalonzo Zepprinans, appeals from the August 26, 2020 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546.  We affirm.

The PCRA court summarized the procedural history as follows:

Appellant was arrested on October 7, 2008[,] and charged with rape, involuntary deviate sexual intercourse[,] and related offenses.  On July 23, 2012, following a bench trial[,] Appellant was found guilty of endangering the welfare of a child, indecent assault [of a person less than 13 years of age], corruption of minors, unlawful contact with a minor [- relating to sexual offenses,] and terroristic threats.[1]  Appellant was found not guilty

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 4304(a)(1), 3126(a)(7), 6301(a)(1)(i), 6318(a)(1), and 2706(a)(1), respectively.

of all other charges.[2]    Sentencing was deferred while a presentence report, psychiatric evaluation[,] and Megan's Law [II[3]] assessment were completed.  On November 22, 2013, [the trial] court found Appellant to be a sexually violent predator [("SVP"), in accordance with a stipulation reached between the parties,] and he was sentenced to two to four years['] incarceration, followed by ten years['] probation.  [The trial court also imposed lifetime registration, notification, and counseling requirements applicable to designated SVPs.]  No direct appeal was taken.

On January 29, 2014, Appellant filed a [PCRA] petition.  On January 4, 2017, the PCRA petition was granted[,] and Appellant's appeal rights were reinstated *nunc pro tunc*.  On January 13, 2017, [a] notice of appeal [] was filed.  On July 24, 2018, [Appellant's] judgment of sentence was affirmed by [this] Court. [**See Commonwealth v. Zepprinans**, 2018 WL 3554863 (Pa. Super. Filed July 24, 2018) (unpublished memorandum).]  On August 15, 2018, [a] petition for allowance of appeal to [our] Supreme Court [] was filed.  On January 23, 2019, [the] petition for allowance of appeal was denied[.[4]]

_____

[2] Appellant was found not guilty of rape of a child, involuntary deviate sexual intercourse – by forcible compulsion, unlawful restraint – risk of serious bodily injury, sexual assault, false imprisonment, indecent exposure, simple assault – child under 12 years of age, recklessly endangering another person, and statutory sexual assault.   18 Pa.C.S.A. §§ 3121(c), 3123(a)(1), 2902(a)(1), 3124.1, 2903(a), 3127(a), 2701(b)(2), 2705, and 3122.1, respectively.

[3] 42 Pa.C.S.A. §§ 9791-9799.9 (expired on December 20, 2012).

[4] Appellant's judgment of sentence became final on April 23, 2019, upon expiration of the 90-day period in which to seek discretionary review with the Supreme Court of the United States.  U.S. Sup. Ct. R. 13(1) (stating, "[a] petition for a *writ* of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review"); **see also** 42 Pa.C.S.A. § 9545(b)(3) (stating, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the

The instant PCRA petition was filed on July 19, 2019.[5] [A] notice of intent to dismiss [pursuant to Pa.R.Crim.P.] 907 was filed on July 15, 2020[,] and on August 2[6], 2020[,[6]] the PCRA petition was formally dismissed. [The instant] appeal was filed on September 24, 2020.[7]

PCRA Court Opinion, 1/14/21, at 1-2 (extraneous capitalization omitted).

Appellant raises the following issues for our review:

1.  Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence[8] was presented that trial counsel was ineffective for refusing to investigate and present an available *alibi* defense, as well as failing to file and litigate appropriate pre-trial motions[?]

2.  Whether the PCRA court erred by dismissing the PCRA petition when clear and convincing evidence was presented of [after-]discovered evidence that firmly established an

_____

Supreme Court of Pennsylvania, or at the expiration of time for seeking the review").

[5] Appellant's PCRA petition was timely filed because it was filed within one year of his judgment of sentence becoming final on April 23, 2019. **See** 42 Pa.C.S.A. § 9545(b)(1) (stating, a PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final").

[6] A review of the trial court docket reveals that the PCRA court dismissed Appellant's petition on August 26, 2020. On August 27, 2020, the PCRA court sent a letter notifying all parties that Appellant's PCRA petition had been dismissed on August 26, 2020. A copy of the order dismissing the PCRA petition is not part of the certified record.

[7] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

[8] Appellant's counsel incorrectly states the evidentiary burden as requiring "clear and convincing evidence." To be eligible for collateral relief, the evidentiary standard is a "preponderance of the evidence." **See** 42 Pa.C.S.A. § 9543(a).

*alibi* defense and would have exonerated [A]ppellant had it been available to be introduced at trial[?[9]]

3. Whether the PCRA court erred by dismissing [A]ppellant's PCRA petition because the trial court issued an illegal sentence by imposing a punitive registration requirement [under Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799-10 to 9799.41,] which violated [A]ppellant's due process rights and extended the length of [his] sentence beyond the statutory maximum[?]

4. Whether the PCRA court erred by failing to grant an evidentiary hearing[?]

Appellant's Brief at 8.[10]

In addressing Appellant's issues, we are mindful of our well-settled standard and scope of review of a PCRA court's dismissal of a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."

---

[9] Throughout his brief, Appellant's counsel incorrectly refers to the grounds for PCRA relief as "newly-discovered evidence." The basis for PCRA relief set forth in Section 9543(a)(2)(vi) is properly referred to as "after-discovered evidence" and should not be confused with the exception to the PCRA jurisdictional time-bar known as the "newly-discovered facts" exception, as set forth in Section 9545(b)(1)(ii). **Compare** 42 Pa.C.S.A. § 9543(a)(2)(vi) **with** 42 Pa.C.S.A. § 9545(b)(1)(ii).

[10] Counsel for Appellant is reminded that briefs filed with this Court are required to have, *inter alia*, double spaced text that is no smaller than 14-point font (12-point font in footnotes). **See** Pa.R.A.P. 2135(c); **see also** Pa.R.A.P. 124(a)(3) and (4).

*Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

Appellant's first issue alleges that trial counsel was ineffective in failing to investigate and to call, at trial, potential *alibi* witnesses and in failing to file a pre-trial motion to introduce the minor victim's[11] diary that purportedly "documented evidence of [the minor victim's] current sexual activity with another male." Appellant's Brief at 13-15.

> To be eligible for relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate, **by a preponderance of the evidence**, that (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or omission; and (3) there is a reasonable probability that the result of the proceeding would have been different absent such error. *Commonwealth v. Steele*, 961 A.2d 786, 796 (Pa. 2008). With regard to the second, *i.e.*, the "reasonable basis" prong, this Court will conclude that counsel's chosen strategy lacked a reasonable basis only if the appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (citation omitted). To establish the third prong, *i.e.*, prejudice, the appellant must show that there

---

[11] "The evidence at trial established that Appellant sexually molested [the minor victim] from approximately the age of eight [years old] until she was sixteen[ years of age.]" PCRA Court Opinion, 1/14/21, at 2.

is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's action or inaction. ***Commonwealth v. Dennis***, 950 A.2d 945, 954 (Pa. 2008).

***Commonwealth v. Matias***, 63 A.3d 807, 810 (Pa. Super. 2013) (emphasis added), *appeal denied*, 74 A.3d 1030 (Pa. 2013).

"Neglecting to call a witness differs from failing to investigate a witness in a subtle but important way." ***Commonwealth v. Stewart***, 84 A.3d 701, 712 (Pa. Super. 2013), *appeal denied*, 93 A.3d 463 (Pa. 2014). "A claim that trial counsel did not conduct an investigation or interview known witnesses presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation." ***Stewart***, 84 A.3d at 712. "[I]t can be *per se* unreasonable for [a] defense attorney to conduct no investigation into known witnesses[.]" ***Commonwealth v. Maldonodo***, 173 A.3d 769, 783 (Pa. Super. 2017) (*en banc*), *appeal denied*, 182 A.3d 991 (Pa. 2018); ***see also Stewart***, 84 A.3d at 712 (stating, "failure to prepare is not an example of forgoing one possible avenue to pursue another approach; it is simply an abdication of the minimum performance required of defense counsel" (citations, original quotation marks, and brackets omitted)).

> [T]he value of [an] interview [of a potential *alibi* witness] is to inform [trial] counsel of the facts of the case so that he[, or she,] may formulate strategy. Perhaps, after questioning these [potential] witnesses, [trial] counsel may have concluded that the best strategy was not to call them[.] However, no such claim of strategy can be attached to a decision not to interview or make an attempt to interview [potential *alibi* witnesses] prior to trial.

*Stewart*, 84 A.3d at 713, *quoting* **Commonwealth v. Mabie**, 359 A.2d 369, 374-375 (Pa. 1976). When examining the reasonable basis prong of the three-part test for ineffectiveness, an appellate court is concerned with "the decision not to interview the witnesses, not the decision to refrain from calling them at trial[.]" **Stewart**, 84 A.3d at 713. As for the final element of the three-part test for ineffectiveness, Appellant is required to show prejudice. **Id.** at 712

In contrast, "[a] failure to call a witness is not *per se* ineffective assistance of counsel for such [a] decision usually involves matters of trial strategy." **Matias**, 63 A.3d at 811 (citation omitted). To establish ineffectiveness for failing to call a potential witness to testify at trial, the petitioner must prove that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial

**Id.** at 810-811 (citations omitted). To establish prejudice, the petitioner "must show how the [potential witness's] testimony would have been beneficial under the circumstances of the case" and "helpful to the defense" such that the absence of the testimony denied the petitioner a fair trial. **Id.** at 811 (citation omitted); **see also Commonwealth v. Chmiel**, 889 A.2d 501, 546 (Pa. 2005) (holding, "[t]rial counsel's failure to call a [potential witness] does not constitute ineffective assistance without some showing that

the [potential] witness'[s] testimony would have been beneficial or helpful in establishing the asserted defense"), *cert. denied*, 549 U.S. 848 (2006).

Here, Appellant asserts that, for the period during which the sexual assaults occurred, he provided trial counsel with the names and addresses of both a representative of an employer for which Appellant worked and a representative of the career school he attended. Appellant's Brief at 14. Appellant contends that these individuals would have supported an *alibi* defense.[12] *Id.* Appellant contends that his trial counsel "did not investigate this information" or "file or present notice of an *alibi* defense." *Id.* Appellant argues,

> [t]rial counsel's failure to move to introduce the written entries from [the minor victim's] diary, as well as his failure to obtain and present *alibi* testimony, had a significantly adverse effect on the outcome of the trial. The lack of *alibi* evidence, combined with counsel's failure to seek introduction of the exculpatory information contained in the diary entries, left [A]ppellant without any evidence to present to the [trial] court in defense of the allegations against him. Without any defense evidence, a reliable determination of guilt was not, and could not[,] be made at trial.

*Id.* at 15.

The PCRA court explained that "[a]n *alibi* is a defense that places the defendant at the relevant time [of the incident] in a different place than the

---

[12] Specifically, Appellant asserts that the employer representative would have provided an *alibi* that he worked an evening or overnight shift on the dates and during the times the minor victim stated the sexual assaults were committed. Appellant's Brief at 17. Similarly, Appellant asserts that the career school representative would establish that he was "enrolled at school during the evening hours" when the sexual assaults were committed. *Id.*

involved [location,] and so removed therefrom[,] as to render it impossible for [the defendant] to be the guilty party." PCRA Court Opinion, 1/14/21, at 4 (citation omitted). In determining that Appellant failed to establish the prejudice element of his ineffectiveness claim based upon trial counsel's failure to investigate and to call potential *alibi* witnesses at trial, the PCRA court stated,

> Appellant proffered that [the employer representative] and [the career school representative] should have been used in his defense. [The employer representative] would, according to Appellant, testify that Appellant worked weekdays from 10:00 p.m. through 6:00 a.m. from September 27, 1998[,] through May 16, 2003[,] at [employer's place of business. The career school representative] would, according to Appellant, testify that Appellant attended [career training classes] on week[nights] from 6:30 p.m. through 12:00 a.m. from June 16, 2007[,] through November 30, 2007. Appellant fails to establish that either of these potential witnesses constitute an *alibi* **as the minor victim's testimony did not establish specific dates and times the abuse occurred, only developing that the abuse occurred over about a [nine-]year period from 1999[, to] 2008[,] and at some point after she went to bed, not defining any specific hour of the day or day of the week.** Appellant further claims that this *alibi* evidence was discovered after trial and would have exonerated him[. T]his evidence does not constitute an *alibi* and would not have changed the outcome of the trial. The absence of this testimony was not so prejudicial as to deny Appellant a fair trial[.]

*Id.* at 5 (emphasis added).[13]

---

[13] In its analysis, the PCRA court noted, "Appellant further claims that this *alibi* evidence was discovered **after trial** and would have exonerated him[.]" PCRA Court Opinion, 1/14/21, at 5 (emphasis added). In his brief, Appellant asserted that he provided the names and addresses of the employer representative and career school representative to trial counsel **prior to trial**

We begin our analysis by reiterating that in order for Appellant to succeed on his ineffectiveness claims alleging either a failure to investigate potential *alibi* witnesses or a failure to call potential *alibi* witnesses at trial, Appellant was required to plead and prove **by a preponderance of the evidence** that, *inter alia*, the testimony of the potential *alibi* witnesses, if presented at trial, would have changed the outcome.[14] **See Matias**, 63 A.3d at 810-811; **see also Stewart**, 84 A.3d at 712. Here, Appellant asserts that he was prejudiced by trial counsel's failure to investigate and to call at trial representatives from his former employer and career school. Appellant submits that a representative from a former employer would have testified that Appellant was employed on a full-time basis from September 1998, to May 2003, and that Appellant worked the 10:00 p.m. to 6:00 a.m. shift. **See** Appellant's Memorandum of Law in Support of PCRA Petition, 9/24/19, at

---

and that trial counsel was ineffective for failing to investigate these potential witnesses and to subsequently call them as *alibi* witnesses at trial. Appellant's Brief at 14. For reasons discussed more fully *infra*, the potential *alibi* witnesses cannot form the basis of Appellant's ineffectiveness claim, which requires, *inter alia*, allegations that trial counsel knew of the witnesses' existence prior to trial, and simultaneously form the basis for Appellant's after-discovered evidence claim, which requires, *inter alia*, allegations that the existence of potential *alibi* witnesses was unknown at the time of trial.

[14] Although a failure to investigate known witnesses can be *per se* unreasonable, we discern no facts or circumstances in the certified record that suggest trial counsel's alleged failure to investigate the potential *alibi* witnesses constituted *per se* prejudice or *per se* ineffectiveness. In fact, given the inherent conflict between Appellant's ineffective assistance claim and his after-discovered evidence claim, we are reluctant to follow any legal principle that would relieve Appellant of an otherwise applicable evidentiary burden.

Exhibit A. Appellant further submits that a representative from a career school he attended would have testified that he was enrolled in a career training program from June 2007, to November 2007, and that he attended weeknight classes from 6:30 p.m. to 12:00 a.m. *Id.* at Exhibit B.

A review of the record demonstrates that the series of criminal episodes leading to Appellant's convictions occurred between 1999, and 2008. N.T., 7/18/12 (Vol. 2), at 25-69.[15] The minor victim testified that the incidents occurred at night, while her mother was either working or otherwise out of the house, and that the incidents would occur one to two hours before her mother arrived home. *Id.* at 25, 27, 40-41, 47, 57, 67, 125-126. The minor victim stated that her mother worked from 3:00 p.m. to 11:00 p.m. five nights a week and was gone from the house the other two nights of the week. *Id.* at 42, 125-126 (stating her mother was never home at night). The minor victim testified that the incidents were "consistent" and that when the incidents started, they occurred every night but, as time went on, they "slowed down from every night to every other night." *Id.* at 106-107, 125. The minor victim stated that, when she was 13 or 14 years old, she lived in Johnstown, Pennsylvania with other family members and did not live with Appellant. *Id.*

---

[15] The record contains two transcripts dated July 18, 2012. The first transcript dated July 18, 2012, pertains to the notes of testimony before the motions court, as discussed *infra*. This transcript for ease of identification will be designated as "(Vol. 1)." The second transcript dated July 18, 2012, which pertains to the notes of testimony from Appellant's trial, will be designated as "(Vol. 2)."

at 111. Nevertheless, an assault the minor victim detailed for the fact-finder occurred when she was 13 years old, which would have been sometime between April 2005, and April 2006, based upon the minor victim's date of birth. *Id.* at 34-39. The minor victim stated that, on this occasion, Appellant gave her a "little blue pill that looked like a football" and that after swallowing the pill, the minor victim felt dizzy and tired. *Id.* at 34. The minor victim explained that when Appellant gave her the pill, she was wearing only a towel, having just taken a shower, and that after taking the pill and falling asleep, she awoke wearing only a shirt and that she found what she identified as semen on her leg. *Id.* at 36-37.

Based upon our review of the record, we concur with the PCRA court that Appellant failed to establish that he was prejudiced by trial counsel's purported failure to investigate potential *alibi* witnesses or his purported failure to call potential *alibi* witnesses at trial. While the employer representative may have provided Appellant with a potential *alibi* during certain times, on certain days of the week, covering the period of September 1998, to May 2003, the minor victim stated that the incidents occurred almost every night at first, and then moved to every other night, describing incidents that occurred on nights Appellant was not working, or before he went to work. Moreover, as suggested *supra*, the minor victim detailed an incident that occurred when she was 13 years old that would have taken place after Appellant left his employment. In addition, this same incident occurred before Appellant started his training at the career school in June 2007. Thus, while

a career school representative may have provided Appellant a potential *alibi* for a five-month period in 2007 (June to November) on weeknights between 6:30 p.m. and 12:00 a.m., Appellant would nonetheless have been able to commit acts against the minor victim on evenings he was not in class. Appellant failed to prove **by a preponderance of the evidence** that the absence of the testimony from the two potential *alibi* witnesses would have demonstrated a reasonable probability that the outcome of the trial could have been different but for trial counsel's actions or inactions. Consequently, Appellant's first issue, as it pertains to trial counsel's failure to investigate and to call potential *alibi* witnesses, is without merit.

Appellant also claims in his first issue that trial counsel was ineffective for failing to file a pre-trial motion and offer of proof regarding the minor victim's alleged past sexual conduct. Appellant's Brief at 13. Specifically, Appellant contends trial counsel was ineffective for failing to file a pre-trial motion seeking introduction of passages from the minor victim's diary evidencing her "current sexual activity with another male." *Id.*

Section 3104(a) of the Pennsylvania Crimes Code, commonly referred to as the "Rape Shield Law," states that,

> [e]vidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a).[16]   Section 3104(a) applies when a prosecution involves, *inter alia*, charges brought under Chapter 27 (relating to assault), 18 Pa.C.S.A. §§ 2701-2718, charges brought under Chapter 31 (relating to sexual offenses), 18 Pa.C.S.A. §§ 3101-3141, charges of endangering the welfare of a child (if the offense involved sexual contact with the victim), 18 Pa.C.S.A. § 4304, and charges of unlawful contact with a minor (relating to sexual offenses), 18 Pa.C.S.A § 6318.  ***See*** 18 Pa.C.S.A. § 3104(c).

The purpose of the Rape Shield Law is "to prevent the trial from shifting its focus from the defendant's guilt or innocence to the victim's reputation or moral virtue." ***Commonwealth v. Rogers***, 250 A.3d 1209, 1212 (Pa. 2021). "It additionally removes obstacles to the reporting of sex crimes." ***Id.*** at 1216. The exclusionary protections afforded by the Rape Shield Law, however, must be balanced against a defendant's constitutional right to a fair trial, including the right to present evidence and conduct reasonable cross-examination of witnesses.  ***Id.*** at 1216-1217.

> [C]ourts have found the [Rape Shield Law] unconstitutional as applied in circumstances where the defendant seeks to introduce evidence for reasons unrelated to impugning the complainant's character, and the probative value of that evidence outweighs the danger of unfair prejudice.

---

[16] We note that, effective August 27, 2019, Section 3104 was expanded to include, *inter alia*, potential exclusion of evidence of specific instances of past sexual victimization and allegations of past sexual victimization.  ***See*** Act 2019, June 28, P.L. 214, No. 24, § 1.

*Id.* at 1217. For example, the Rape Shield Law cannot be utilized to prohibit relevant, potentially-exculpatory evidence. *Id.* The Rape Shield Law also cannot be utilized to prohibit evidence that the complainant harbored a bias or hostility towards the defendant or that the complainant had a motive to fabricate the accusation. *Id.* at 1217-1218.

In order to introduce evidence of the alleged victim's past sexual conduct, Section 3104(b) of the Rape Shield Law requires the defendant to first "file a written motion and offer of proof at the time of trial." 18 Pa.C.S.A. § 3104(b); *see also Commonwealth v. Burns*, 988 A.2d 684, 690 (Pa. Super. 2009) (stating, this Court has "repeatedly stated that a defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof prior to trial"), *appeal denied*, 8 A.3d 341 (Pa. 2010). If the trial court determines that the motion and offer of proof are facially sufficient, the trial court "shall order an in[-]camera hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in" Section 3104(a), which only permits evidence of, *inter alia*, the alleged victim's past sexual conduct **with the defendant** where consent of the alleged victim is at issue and the evidence is otherwise admissible pursuant to the Pennsylvania Rules of Evidence.[17] *See* 18 Pa.C.S.A. § 3104(b); *see*

_____

[17] This Court in *Burns*, *supra*, recognized, however, that

*also* 18 Pa.C.S.A. § 3104(a); ***Commonwealth v. Fink***, 791 A.2d 1235, 1240 (Pa. Super. 2002) (stating, "the Rape Shield Law bars prior instances of sexual conduct except those with the defendant where consent of the victim is at issue and the evidence is otherwise admissible").

In denying Appellant's claim of ineffective assistance of trial counsel for failing to file a pre-trial motion and offer of proof pursuant to Section 3104(b) of the Rape Shield Law, the PCRA court found Appellant's underlying claim, namely the admissibility of evidence pertaining to the minor victim's prior sexual conduct with a person other than Appellant, to be without arguable merit. PCRA Court Opinion, 1/14/21, at 4 (stating, "[e]vidence that the minor victim was having consensual sex [with someone other than Appellant] is inadmissible under the [] Rape Shield Law"). The PCRA court explained that the evidence would have been inadmissible, despite trial counsel's failure to file a motion and offer of proof, because the prior sexual activity was with someone other than Appellant and Appellant failed to show how the evidence exonerated him. ***Id.***; ***see also Matias***, 63 A.3d at 810 (requiring the

_____

> *via* interpretive efforts by the courts of this Commonwealth, the Rape Shield [Law] has been found to bow to the following exceptions: (1) evidence that negates directly the act of intercourse with which a defendant is charged; (2) evidence demonstrating a witness'[s] bias or evidence that attacks credibility; and (3) evidence tending to directly exculpate the accused by showing that the alleged victim is biased and thus has motive to lie, fabricate, or seek retribution *via* prosecution.

***Burns***, 988 A.2d at 690.

- 16 -

underlying claim forming the basis of the ineffectiveness claim to be of arguable merit).

A review of the record demonstrates that trial counsel did not file a pre-trial motion and offer of proof seeking to admit evidence of the minor victim's diary purporting to detail her prior sexual conduct with a person other than Appellant. *See, generally,* Trial Court Docket; *see also* N.T., 7/18/12 (Vol. 1), at 7, 13, 15. The motions court, however, did entertain oral argument on the issue of whether trial counsel was permitted to inquire about a notation in the minor victim's medical records, which stated the minor victim had reported that "something" happened four weeks prior to a medical examination. N.T., 7/18/12 (Vol. 1), at 7-17. Trial counsel argued that he was attempting to inquire about this notation, not in an effort to discuss the minor victim's prior sexual conduct with individuals other than Appellant but, rather, to impeach the credibility of the victim by showing that nothing happened four weeks prior to the medical examination. *Id.* at 12, 15 (stating, "I [(trial counsel)] am not asking about [the victim's] boyfriend or who she is involved with sexually"). The motions court stated, "A simple question as to whether or not [the victim fabricated that something happened to her four weeks prior to the medical examination] is relevant. It goes to the truth. Going beyond that into sexual conduct or any escapades she may have or may not have had would not be allowed" pursuant to the Rape Shield Law. *Id.* at 14-15. Trial counsel concurred with the motions court that any discussion of

the minor victim's prior sexual activities with third-parties was protected by the Rape Shield Law. *Id.* at 15.

We discern no abuse of discretion or error of law in the PCRA court's denial of Appellant's ineffectiveness claim challenging trial counsel's failure to file a pre-trial motion and offer of proof regarding the minor victim's past sexual conduct with individuals other than Appellant. Plainly, this claim lacked merit, as evidence of the minor victim's prior sexual activities with persons other than Appellant was barred by the Rape Shield Law. Moreover, there has been no showing that the victim's prior sexual conduct with persons other than Appellant would reveal a specific bias against, or hostility toward, Appellant and a motive to seek retribution by false accusation. Therefore, as no exception to the Rape Shield Law existed that would permit the introduction into evidence of the minor victim's prior sexual conduct with persons other than Appellant, the underlying claim regarding the written motion and offer of proof is without arguable merit. Consequently, Appellant's claim of ineffective assistance of trial counsel to file such a written motion and offer of proof must fail.

In his second issue, Appellant asserts that he is entitled to relief because the potential *alibi* witnesses constituted after-discovered evidence that would have resulted in a different outcome if such evidence had been introduced at trial. Appellant's Brief at 16-17; *see also* 42 Pa.C.S.A. § 9543(a)(2)(vi) (stating that, after-discovered evidence is grounds for PCRA relief). In forwarding this claim, Appellant contends - contrary to the assertion in his first

issue - that "after he was convicted at trial, several *alibi* witnesses [(the employer representative and the career school representative)] came forward and became known to [Appellant]." Appellant's Brief at 16-17.

To receive a new trial based on after-discovered evidence, a petitioner must satisfy a four-part test requiring:

> the petitioner to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018), *citing* ***Commonwealth v. Pagan***, 950 A.2d 270 (Pa. 2008), *cert. denied*, 555 U.S. 1198 (2009).

In the case *sub judice*, we concur with the PCRA court that Appellant failed to demonstrate, for the reasons discussed *supra*, that he was prejudiced by the absence of the potential *alibi* witnesses' testimony.[18] Therefore, Appellant's second issue is without merit.

Appellant's third issue raises the following claims: (1) his lifetime registration requirements imposed under SORNA violated his constitutional

---

[18] Since the alleged *alibi* witnesses included representatives of Appellant's former employer and former career school, we are highly skeptical that such witnesses could not have been located at the time of trial through the exercise of due diligence.

right to reputation without due process,[19] and (2) his sentence was illegal[20] because the SORNA registration requirements imposed a sentence in excess of the statutory maximum by requiring him to register for the remainder of his lifetime with the Pennsylvania State Police as a SVP.[21] [22]  Appellant's Brief at 17-18.

---

[19] 42 Pa.C.S.A. § 9543(a)(2)(i) (stating that, to be eligible for collateral relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence, *inter alia*, that the conviction or sentence resulted from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place").  Because SORNA is a collateral consequence of a criminal sentence, as discussed *infra*, SORNA and its mandates, *inter alia*, do not involve "the truth determining process" and as such do not fall within the purview of the PCRA.

[20] 42 Pa.C.S.A. § 9543(a)(2)(vii) (stating that, to be eligible for collateral relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence, *inter alia*, that the conviction or sentence resulted from "[t]he imposition of a sentence greater than the lawful maximum").  Because the mandates and requirements of SORNA are non-punitive, they do not constitute a part of a criminal sentence and cannot be challenged under the guise of an illegal sentence.

[21] Section 9799.53 of SORNA defines SVP as, *inter alia*, "a person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses").  42 Pa.C.S.A. § 9799.53.

[22] While Appellant's claims appear to sound as claims cognizable under the PCRA – a conviction or sentence resulting from, *inter alia*, a constitutional violation or an illegal sentence – SORNA and its mandates, including lifetime registration as a SVP, are non-punitive collateral consequences of a criminal sentence, as more fully discussed *infra*, and, as such, substantive challenges to the application of SORNA are not cognizable under the PCRA.

Appellant's challenge to the constitutionality of his lifetime registration requirement under SORNA raises a question of law. ***Commonwealth v. Morgan***, 258 A.3d 1147, 1152 (Pa. Super. 2021) (stating, "[w]hen an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law"). As with all questions of law, our standard of review is *de novo* and our scope of review is plenary. ***Lacombe***, 234 A.3d at 608.

> In addressing constitutional challenges to legislative enactments, [such as SORNA, appellate courts] are ever cognizant that the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society, but also that any restriction is subject to judicial review to protect the constitutional rights of all citizens. We emphasize that a party challenging a statute must meet the high burden of demonstrating

---

***Commonwealth v. Smith***, 240 A.3d 654, 658 (Pa. Super. 2020). Nonetheless, our Supreme Court in ***Commonwealth v. Lacombe***, 234 A.3d 602 (Pa. 2020) did not specifically foreclose a PCRA petition as the procedural mechanism in which to raise such claims. ***Lacombe***, 234 A.3d at 617-618 (declining to find a PCRA petition, or any other procedural mechanism, as the exclusive method for challenging SORNA). As such, in recognizing a registrant's complications in raising challenges to SORNA, appellate courts have liberally permitted registrants to raise SORNA claims, such as the ones raised by Appellant, in a variety of filings, including PCRA petitions. ***See Commonwealth v. Elliott***, 249 A.3d 1190, 1193 (Pa. Super. 2021) (considering the merits of the petitioner's SORNA claims raised within the context of a PCRA petition), *appeal denied*, 2021 WL 4165052 (Pa. Filed September 14, 2021) (slip copy); ***see also Smith***, 240 A.3d at 658 (remanding the case for the trial court to consider the SORNA claims raised in a PCRA petition); ***Lacombe***, 234 A.3d at 617 (recognizing that, "frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final"). Therefore, we consider the merits of Appellant's SORNA challenges raised within the context of his PCRA petition.

that the statute clearly, palpably, and plainly violates the Constitution.

***Commonwealth v. Torsilieri***, 232 A.3d 567, 575 (Pa. 2020) (citation and quotation marks omitted).

Here, Appellant was subject to the registration requirements of Subchapter I of SORNA, 42 Pa.C.S.A. §§ 9799.51 – 9799.75, because he committed his offenses prior to December 20, 2012. ***See*** 42 Pa.C.S.A. § 9799.52;[23] ***see also Morgan***, 258 A.3d at 1152 (stating, Subchapter I of SORNA "applies to crimes committed after April 22, 1996, but before December 20, 2012"); ***Smith***, 240 A.3d at 657 (stating, "[b]ecause offender registration requirements evolve pursuant to the legislative decisions of our General Assembly, registrants must comply with **current** law" (emphasis in original)). Under Section 9799.55 of SORNA, Appellant was required to register for the remainder of his lifetime because, *inter alia*, he was a SVP. 42

---

[23] Section 9799.52 of SORNA states that Subchapter I shall apply to individuals who were:

> (1) convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012, whose period of registration with the Pennsylvania State Police, as described in section 9799.55 (relating to registration), has not expired; or

> (2) required to register with the Pennsylvania State Police under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired.

42 Pa.C.S.A. § 9799.52. Subchapter I applied to Appellant because he was convicted of indecent assault of a person less than 13 years of age on July 23, 2012, and his period of registration has not expired.

Pa.C.S.A. § 9799.55(b)(1) and (3) (requiring lifetime registration when, *inter alia*, the individual is a SVP).

Appellant asserts that his registration and notification requirements, as imposed by Subsection I of SORNA, violated his right to due process by denying "his right to reputation[24] through the presumption that he is dangerous and a high[-]risk to repeat sexually criminal behavior." Appellant's Brief at 18. Appellant argues that he was not provided "the opportunity to prove that he is not highly likely to repeat the offense or similar behavior" in violation of his due process right. *Id.* In other words, Appellant asserts that he was not provided an opportunity to be heard prior to the trial court determining Appellant was a SVP and such a designation invades his right to reputation.

Regarding Appellant's assertion that his required lifetime registration as a SVP violated his due process right and right to reputation by denying him the opportunity to rebut the presumption and challenge his SVP determination, this Court in *Morgan*, *supra*, held that,

> Although [a] SVP designation and the concomitant [registration, notification, and counseling] requirements infringe upon a defendant's right to reputation, it is only after the [] assessment and hearing process[, as set forth at 42 Pa.C.S.A. § 9799.58,] that an individual may be subject to that infringement. Upon review, we conclude that this procedure comports with due process and that Subchapter I is narrowly tailored to its compelling state purpose of protecting the public "from those who have been found

_____

[24] Article I, Section I of the Pennsylvania Constitution "specifically protects the right to reputation as a fundamental right[.]" *Morgan*, 258 A.3d at 1152.

to be dangerously mentally ill." [**Commonwealth v. Butler**, 226 A.3d 972, 992-993 (Pa. 2020)]. Accordingly, we hold that SVP designations under Subchapter I of SORNA II are constitutional and do not violate the right to reputation under Pennsylvania's constitution.

**Morgan**, 258 A.3d at 1157.

A review of the record demonstrates that after his conviction but prior to sentencing, Appellant was assessed, pursuant to Section 9799.58 of SORNA, to determine if he should be classified as a SVP. N.T., 11/22/13, at 3-4. Appellant stipulated to the findings of the assessment report that determined he was a SVP.[25] **Id.** at 3. "[B]ased on the stipulation [and] the [assessment] report," the trial court designated Appellant a SVP and informed Appellant that he was subjected to lifetime registration with the Pennsylvania State Police. **Id.** at 5, 27. It was only after his Section 9799.58 assessment and a hearing, at which Appellant had to opportunity to challenge the assessment report and provide contradictory evidence, that he was designated a SVP. Therefore, we find Appellant's SVP designation under Subchapter I of SORNA was constitutionally sound and did not violate his right to reputation. **See Morgan**, 258 A.3d at 1157. Consequently, we find Appellant's claim based upon a violation of his due process right and right to reputation to be without merit.

---

[25] Appellant also stipulated that the assessment was conducted, in accordance with Section 9799.58, by a member of the Sexual Offenders Assessment Board who was an expert in the assessment of sexual offenders. N.T., 11/22/13, at 4.

Turning to Appellant's claim that the registration requirements are punitive in nature and, therefore, constitute an illegal sentence,[26] we find this claim to be without merit because the Subchapter I lifetime registration requirements of SORNA are non-punitive and do not constitute a part of Appellant's sentence.

This Court in **Commonwealth v. Strafford**, 194 A.3d 168, 173 (Pa. Super. 2018) stated,

> In SORNA the legislature authorized [trial] courts to include periods of registration as part of a sentence. Similar to the treatment of the payment of fines or restitution, the legislature did not tie the period of registration to the length of incarceration. **See** 42 Pa.C.S.[A.] § 9799.14 ([concerning,] "Sexual offenses and tier system"); [**see also**] 42 Pa.C.S.[A.] § 9799.15 ([concerning,] "Period of registration"). SORNA's registration provisions are not constrained by [18 Pa.C.S.A. § 1103.[27]]

---

[26] Appellant contends that his lifetime registration under SORNA is "punitive in nature" and, therefore, his sentence was illegal because his incarceration, probationary period, and registration requirements combined imposed a punitive sanction "in excess of the combined mandatory sentences for all of the crimes for which he was convicted and sentenced." Appellant's Brief at 17-18.

[27] Section 1103 states,

> Except as provided in 42 Pa.C.S.[A.] § 9714 (relating to sentences for second and subsequent offenses), a person who has been convicted of a felony may be sentenced to imprisonment as follows:
>
> (1) In the case of a felony of the first degree, for a term which shall be fixed by the court at not more than 20 years.

> **Rather, SORNA's registration requirements are an authorized punitive measure separate and apart from Appellant's term of incarceration.** The legislature did not limit the authority of a [trial] court to impose registration requirements only within the maximum allowable term of incarceration; in fact, the legislature mandated the opposite and required [trial] courts to impose registration requirements in excess of the maximum allowable term of incarceration.

*Strafford*, 194 A.3d at 173 (emphasis added). Appellate courts have repeatedly recognized that the lifetime registration requirements of Subchapter I of SORNA are not punitive but, rather, are collateral consequences, *i.e.*, civil consequences, of a defendant's criminal conviction and judgment of sentence. *See Lacombe*, 234 A.3d at 627 (stating, "Subchapter I [of SORNA] does not constitute criminal punishment"); *see also Butler*, 226 A.3d at 993 (stating that, the registration, notification, and counseling requirements applicable to SVPs do not constitute criminal punishment); *Smith*, 240 A.3d at 658 (stating that, the mandates of Subchapter I of SORNA are "[n]on-punitive, administrative requirements [and] are merely collateral consequences of a criminal conviction"); *Morgan*, 258 A.3d at 1152 (stating that, the registration requirements of Subchapter I

---

(2) In the case of a felony of the second degree, for a term which shall be fixed by the court at not more than ten years.

(3) In the case of a felony of the third degree, for a term which shall be fixed by the court at not more than seven years.

18 Pa.C.S.A. § 1103.

of SORNA are non-punitive); ***Elliott***, 249 A.3d at 1193 (stating, the registration requirements of Subchapter I of SORNA "are not criminal sanctions"). Therefore, because the registration requirements of Subchapter I of SORNA are non-punitive, a lifetime registration mandate cannot form the basis of an illegal sentence claim. Consequently, Appellant's claim of an illegal sentence must fail.

In his final issue, Appellant asserts that the PCRA court erred in denying him an evidentiary hearing. Appellant's Brief at 19. Appellant contends that he "raised significant claims of trial counsel's ineffectiveness, violations of his constitutional rights, and the imposition of an illegal sentence" and that these "claims were legitimate based upon fact and supported by legal precedent." ***Id.***

"It is well[-]settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Maddrey***, 205 A.3d 323, 328 (Pa. Super. 2019) (citation omitted), *appeal denied*, 218 A.3d 380 (Pa. 2019). The decision to deny a request for an evidentiary hearing is within the discretion of the PCRA court, and an appellate court will not overturn that decision absent an abuse of discretion. ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015).

Here, the PCRA court denied Appellant's request for an evidentiary hearing because it was satisfied, based on the record, that "there [were] no

genuine issues concerning any material fact and that [Appellant was] not entitled to [PCRA] relief[.]" PCRA Court Opinion, 1/14/21, at 6. For the reasons discussed *supra*, we concur with the PCRA court that Appellant failed to show that genuine issues concerning material facts persisted in the record and that there was a reasonable likelihood that his claims would succeed. Therefore, we discern no abuse of discretion in the PCRA court's denial of Appellant's request for an evidentiary hearing. As such, Appellant's final issue is without merit.[28]

_____

[28] Moreover, Appellant's request for an evidentiary hearing failed to comply with Section 9545(d)(1) of the PCRA. Section 9545(d)(1) sets forth the certification requirements for a request for an evidentiary hearing as following,

> (i) Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the witness's name, address, date of birth[,] and substance of testimony and shall include any documents material to that witness's testimony.

> (ii) If a petitioner is unable to obtain the signature of a witness under subparagraph (i), the petitioner shall include a certification, signed by the petitioner or counsel, stating the witness's name, address, date of birth[,] and substance of testimony. *In lieu* of including the witness's name and address in the certification under this subparagraph, counsel may provide the witness's name and address directly to the Commonwealth. The certification under this subparagraph shall include any documents material to the witness's testimony and specify the basis of the petitioner's information regarding the witness and the petitioner's efforts to obtain the witness's signature. Nothing in this subparagraph shall be construed to contravene any applicable attorney-client privilege between the petitioner and postconviction counsel.

42 Pa.C.S.A. § 9545(d)(1)(i) and (ii). A review of Appellant's amended PCRA petition, as well as the attached memorandum of law, in support thereof, and

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2022

---

its exhibits, demonstrates that while the exhibits attached to the memorandum of law include a statement summarizing the testimony of the proposed *alibi* witnesses, as well as the witnesses' addresses and supporting documentation, PCRA counsel failed to include this information as part of the PCRA petition requesting an evidentiary hearing and failed to include the requisite certifications explaining, *inter alia*, why the witnesses were unable to sign statements summarizing their potential testimony. **See Commonwealth v. Grayson**, 212 A.2d 1047, 1052 (Pa. Super. 2019) (stating that, a petition may comply with Section 9545(d)(1) if the petition includes "a signed certification as to each intended witness and the petitioner must also provide the witness's name, address, date of birth[,] and the substance of the proposed testimony"). Appellant's failure to comply with Section 9545(d)(1) would have rendered the proposed witnesses' testimony inadmissible even if the PCRA court held an evidentiary hearing. **See** 42 Pa.C.S.A. § 9545(d)(1)(iii) (stating, "[f]ailure to substantially comply with the requirements of [Section 9545(d)(1)] shall render the proposed witness's testimony inadmissible").