**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VINCENT SMITH | : | |
| | : | |
| Appellant | : | No. 2430 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 3, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008406-2021

BEFORE:  PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 17, 2025**

Appellant Vincent Smith appeals from the judgment of sentence of four to eight years' incarceration imposed by the Philadelphia Court of Common Pleas following his conviction by a jury of Rape of an Unconscious Person, Sexual Assault, and Indecent Assault of an Unconscious Person.[1]  He challenges the denial of his motion to admit certain evidence precluded by the Rape Shield Law and his motion for a mistrial.  After careful review, we affirm.

We glean the relevant factual and procedural history from the trial court's Pa.R.A.P. 1925(a) opinion and the certified record.  *See* Tr. Ct. Op., 11/5/24, at 1-6.  On July 9, 2021, the victim, M.D., hosted a game night party at her house for coworkers, friends, and family members. Appellant, who was M.D.'s friend and co-worker, also attended.  Two of M.D.'s children were in

_____

[1] 18 Pa.C.S. §§ 3121(a)(3), 3124.1, and 3126(a)(4).

the home on the night of the party. The games included drinking shots of liquor and by the end of the evening, M.D. was extremely intoxicated and the last thing she remembered from the evening were people leaving the party.

M.D. awoke the next morning on her living room couch wearing no underwear, which she found odd. M.D. checked the video recorded by her living room security system and it revealed that she had passed out on the living room couch face down with her child asleep nearby, and while she was unconscious, Appellant had removed her underwear, performed oral sex on her, and had sexual intercourse with her. M.D. did not remember any of this occurring, and she confronted Appellant via text message. He initially said the sex was consensual, but when she told him the encounter had been captured on videotape, he admitted to his actions and stated that he made a "wrong decision." *Id*. at 3-4. Appellant reported the assault to the Philadelphia police department and underwent a rape kit examination.

The Commonwealth charged Appellant with the above crimes, and he proceeded to a jury trial on February 7, 2024. The Commonwealth presented testimony from M.D. along with the videotape of the assault and copies of the text messages exchanged between Appellant and M.D. following the assault. In addition, law enforcement personnel and a nurse from the Philadelphia Sexual Assault Response Center testified. M.D. testified, *inter alia*, that although Appellant and she had had two consensual sexual encounters in 2019, she had not consented to, or even known of, Appellant's sexual assault that occurred on July 9, 2021, until she saw the surveillance videotape

recording upon waking. The parties stipulated that a swab of M.D.'s cervix contained Appellant's DNA.

On February 8, 2024, the second day of trial, Appellant's counsel submitted a written motion to admit certain evidence to pierce the Rape Shield Law in anticipation of the Commonwealth arguing that M.D. would not have consented to sex with Appellant with her child less than a foot away. Specifically, Appellant sought to admit two short videos taken in M.D.'s home during other parties showing people dancing and (1) an unknown person putting their face up against the clothed buttocks of M.D., and (2) M.D., fully-clothed, put her face in the fully-clothed crotch of a woman on a table. The proffered videos each show a child in a separate room in the background not paying any attention to M..D.'s activities. Appellant also sought to present testimony from Lana Brandon, one of M.D.'s coworkers, to support his claim that M.D. had fabricated the allegations against him. Specifically, he proffered that Ms. Brandon would testify that M.D. had told her that Appellant had shared the two videos at work and, thus, M.D. was biased against him.

The court immediately held an *in camera* hearing to review the videos and hear Ms. Brandon's testimony, after which it denied Appellant's motion, concluding that "any probative value of the videos would be substantially outweighed by their prejudicial effects." *Id*. at 5. The court also found that Ms. Brandon's testimony said nothing about M.D. believing Appellant had shared the videos at work; rather, her testimony was that, before the July 9,

2021 party, M.D. told her Appellant would not be invited back to her parties because he had gossiped about the parties at work.

The jury convicted Appellant of the above offenses and the court deferred sentencing pending, *inter alia*, a pre-sentence investigation. On May 3, 2024, the court sentenced him to an aggregate term of four to eight years' incarceration, followed by three years' probation. On September 3, 2024, the court denied Appellant's post-sentence motion.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review.

1. Whether the trial court erred in denying Appellant's motion to pierce the rape shield pursuant to 18 Pa.C.S. § 3104, to admit (1) video evidence of the complainant engaging in simulated sex acts in close proximity to her child, and (2) the testimony of Lana Brandon.

2. Whether the trial court erred in denying Appellant's motion for a mistrial based on the Commonwealth's improper statements during its closing argument to the jury.

Appellant's Br. at 8.

Appellant first argues that the trial court erred in refusing to admit evidence that "could have provided context for M.D.['s] allegations and her potential motive to fabricate." *Id*. at 9. He asserts that because the court denied his motion to pierce the Rape Shield Law, the court "erred in excluding critical defense evidence that was both relevant and necessary for [Appellant]

to present a complete defense . . . [to support his] claim that their encounter was consensual." *Id*. at 13.

Our standard of review for a claim of admissibility of evidence under the Rape Shield Law is well settled:

> A trial court's ruling on the admissibility of evidence of the sexual history of a sexual abuse complainant will be reversed only where there has been a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super.2009) (citations and quotation marks omitted).

The Rape Shield Law, set forth in Pennsylvania's Crimes Code, provides in relevant part, as follows:

(a) **General rule.**—Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

(b) **Evidentiary proceedings.**—A defendant who proposes to offer evidence of the alleged victim's past sexual conduct pursuant to subsection (a) shall file a written motion and offer of proof at the time of trial. If, at the time of trial, the court determines that the motion and offer of proof are sufficient on their faces, the court shall order an *in camera*

> hearing and shall make findings on the record as to the relevance and admissibility of the proposed evidence pursuant to the standards set forth in subsection (a).

18 Pa.C.S. § 3104.

The purpose of the Rape Shield Law is to "prevent a trial from shifting its focus from the culpability of the accused towards the virtue and chastity of the victim." *Commonwealth v. Rogers,* 250 A.3d 1209, 1216 (Pa. 2021) citation omitted). "[A] defendant who desires to introduce evidence of the victim's prior sexual conduct must file a written motion and make a specific offer of proof prior to trial." *Burns*, 988 A.2d at 690 (citations omitted). "The requirement of a specific [written] proffer of evidence was designed to prevent a 'fishing expedition' into the areas protected by the Rape Shield Law." *Id.* at 691 (citations omitted). *See also Commonwealth v. Cramer*, 195 A.3d 594, 602-04 (Pa. Super. 2018) (discussing purpose and parameters of Rape Shield Law).

Upon receipt of a written Section 3104(b) motion, trial courts hold an *in camera* hearing to review the relevancy and probative value of the proposed evidence. *Id*. at 603.

> When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: (1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility.

*Id.* (citations and quotation marks omitted).

Here, the trial court held an *in camera* hearing following which it denied

the motion to admit the proffered evidence, concluding that the motion lacked

merit and finding that any probative value of the evidence was outweighed by

its prejudicial effect.  The court explained:

> The [c]ourt's review of the proposed evidence revealed that the videos did not have significant probative value.  Contrary to defense counsel's initial claims, the videos did not show M.D. engaging in any actual sex acts, and her child was not near M.D. while M.D. danced and engaged in simulated sex acts at a house party.  Thus, the videos in question amounted to  little, if any, evidence that M.D. would have willingly engaged in sexual intercourse with [Appellant] while her child was less than a foot away from her.  Instead, the admission of the videos would have simply shifted the focus of the trial toward the virtue and chastity of M.D., which is exactly what the Rape Shield Law was intended to guard against.  The [c]ourt properly determined that any probative value of the videos was outweighed by the danger of unfair prejudice.
>
> * * *
>
> Defense counsel initially stated to the [c]ourt that Ms. Brandon would testify that M.D. had a belief that defendant had circulated the videos to others.  However, Ms. Brandon's testimony at the *in camera* hearing revealed that there was no reasonable basis for such a belief.  M.D. had never made any statements to Ms. Brandon regarding the videos in question nor about any belief that [Appellant] had circulated the videos.  Ms. Brandon would have merely testified that M.D. made a remark to Ms. Brandon suggesting that [Appellant] would not be present at M.D.'s next party due to his gossiping at work.  It would have been improper for the [c]ourt to permit the defense to use such testimony as a means of introducing the highly prejudicial videos, which would have had the effect of shifting the trial's focus to M.D.'s chastity and virtue.  Moreover, the fact that M.D. did in fact have [Appellant] as a guest at her party on July 9, 2021, contradicts Ms. Brandon's testimony that M.D. was biased against [Appellant] prior to the sexual assault.  [Thus,] the [c]ourt properly concluded that the prejudicial effect of permitting the videos to be introduced

through Ms. Brandon's testimony outweighed the minimal probative value of the videos and Ms. Brandon's testimony concerning the videos.

Tr. Ct. Op., at 9-10.

Following our review, we conclude that the trial court properly exercised its discretion in denying Appellant's motion to admit the proffered evidence. We agree with the trial court's cogent analysis. In addition, we emphasize that the proffered evidence would not provide any support for Appellant's claim that M.D. on the day of the assault consented to Appellant having sex with her while she was passed out due to intoxication. Appellant's argument fails to convince us that the court erred or abused its discretion in denying his motion. Accordingly, this issue merits no relief.

In his second issue, Appellant contends, *without citation to the notes of testimony*, that "during its closing argument, the Commonwealth argued that M.D. would never have consented to sex with [Appellant] in the presence of her child, using this claim as circumstantial proof of nonconsent." Appellant's Br. at 18. He argues that because he "was precluded from introducing video evidence that would have directly rebutted [the Commonwealth's statement] … the jury was left with a false impression that was deliberately crafted by the prosecution to bias them against [Appellant]." ***Id***. He concludes that, as a result, the trial court committed reversible error in denying his motion for a mistrial. ***See generally id.*** at 17-20; ***see  id***. at 17 (citing ***Commonwealth v. LaCava***, 666 A.2d 221 (Pa. 1995)). In addition, *again without citation to*

*the record*, Appellant asserts that the court could have issued a curative instruction to the jury to mitigate the alleged prejudice resulting from the prosecutor's statement, but it failed to do so. *Id*. at 20.

Our rules of appellate procedure explicitly require an appellant to include in his brief a "reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c). Here, as noted, Appellant fails to cite to the notes of testimony from the prosecutor's closing argument and the place in the record where Appellant requested a curative instruction. It is not the role of this Court to develop an argument for a litigant or to scour the record to find specific evidence to support an appellant's arguments. *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007). Therefore, "[w]hen an allegation is unsupported [by] any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal." *Commonwealth v. Harris*, 979 A.2d 387, 393 (Pa. Super. 2009) (citations omitted). Accordingly, Appellant has waived this issue.[2]

---

[2] Even if Appellant had not waived this issue, we would affirm on the basis of the trial court's well-reasoned analysis of this issue. *See* Tr. Ct. Op., at 10-12 (reviewing case law relevant to motions for mistrial and the latitude afforded counsel during closing arguments, and observing that "[e]ven if the videos had been played for the jury, the content of the videos would not have served to rebut the Commonwealth's argument. The videos do not show M.D. engaging in any sex acts, let alone a sex act near her child.").

Having concluded Appellant's first issue is meritless and his second issue is waived, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2025